**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

No. 98-30930

CATHERINE E. LELEUX,

Plaintiff-Appellant,

versus

UNITED STATES OF AMERICA,

Defendant-Appellee.

Appeal from the United States District Court
for the Western District of Louisiana

July 1, 1999

Before SMITH, DeMOSS and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

In this appeal from the district court's grant of the Government's motion to dismiss, we confront an unseemly subject. Notwithstanding the need for good order and discipline in the country's armed forces, and strict military rules designed to prevent such an occurrence, an enlisted petty officer in the United States Navy seduced a young recruit in Lafayette, Louisiana. As a result of their sexual encounters, the recruit, Plaintiff-Appellant Catherine E. Leleux ("Leleux"), contracted genital herpes, an incurable virus. Seeking relief for the damages inflicted upon her, Leleux filed the instant suit against the Government and argues that, as the petty officer's employer, the Government was ultimately responsible for his actions under a negligence theory. Although we disdain the behavior that led to Leleux's condition, we ultimately agree with the district court's conclusion that she failed to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). Consequently, we affirm the judgment of the lower court.

**I**

On January 17, 1995, at the age of seventeen, Leleux joined the United States Navy under the auspices of its Delayed Entry Program. She had been recruited through the Naval Recruiting Office in Lafayette, which at that time was staffed by Petty Officers Cecil Branch ("Branch"), Paul M. Sistrunk ("Sistrunk"), and Katherine Nicholson. Sometime after May 4, 1995, when Leleux turned eighteen, she questioned her decision to enlist and expressed her reservations to the Lafayette staff. Having already scheduled her to depart for boot camp on August 29, 1995, and hoping to persuade her to honor her commitment, the Lafayette-based recruiters encouraged Leleux to volunteer her time performing data entry assignments at their office. Leleux agreed to this work, which essentially amounted to a summer job. Over the course of the summer, the recruiters each encouraged Leleux to join them on social outings in order to persuade her that she should still join the Navy. Leleux was often invited to accompany the Naval personnel to events in the Lafayette area that involved the consumption of alcohol. The Government does not dispute that these recreational activities violated both Naval regulations (prohibiting fraternization between officers and recruits) and Louisiana law (proscribing the service of alcoholic beverages to minors).

In August 1995, as the newly-recommitted Leleux's departure for boot camp loomed on the horizon, Sistrunk—a married man—secured the aid of Branch (the recruiter-in-charge at the Lafayette office) in procuring a date with Leleux because he was "too shy" to ask her directly. Leleux indicated her interest to Branch and then spoke directly to Sistrunk, telling him that she needed her father's permission to go out with him. Having secured it, Leleux asked Sistrunk to retrieve her at her grandmother's house, where she was living at the time. Leleux then went out with Sistrunk alone on August 19, 1995. Sistrunk bought beers for Leleux; Leleux became intoxicated and accompanied Sistrunk back to Branch's vacant apartment, where she eventually consented to sexual intercourse with Sistrunk.

Sistrunk and Leleux had sexual intercourse twice more in August 1995, once on the 22nd or 23rd, and again on the 25th or 26th. The second act took place in a motel room which Sistrunk had

rented, and their third act of intercourse again occurred at Branch's apartment, this time while Branch was in another room, but after he had witnessed Sistrunk's serving alcohol to Leleux. On August 29, Leleux was transferred to boot camp; upon physical examination there, Leleux was diagnosed with genital herpes. She alleges that she contracted the disease from Sistrunk as a result of their sexual encounters and that Sistrunk knew or should have known that he was infected. All three recruiters were investigated by the Navy, and Sistrunk was administratively discharged for two violations of the Uniform Code of Military Justice (violation of a lawful general order and adultery) under Other Than Honorable Conditions in Lieu of Trial by Court-Martial on August 6, 1996. Branch was charged with conspiracy to commit a violation of a lawful general order, but the charge was dropped for lack of evidence.

In her complaint, Leleux alleges that Sistrunk seduced her, although she does not suggest that her intoxication led to her losing consciousness or that any of the sexual encounters were in any way nonconsensual. Instead, she contends that, due to her age and inexperience, she was overly-impressed by Sistrunk, who she urges took unfair advantage of his position as a Navy recruiter, her intoxicated condition, and her lack of maturity and experience. She also alleges that she was not properly informed of the standard of behavior expected of Naval personnel; instead, she was brought into an environment which led her to believe that her relationship with Sistrunk was acceptable and even encouraged under Naval regulations. These circumstances, she avers, led to her contraction of a sexually-transmitted disease.

Leleux then instituted this action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671-2680 (1994), to recover damages that she suffered as a result of her relationship with Sistrunk. The Government moved to dismiss pursuant to Rule 12(b)(6), arguing that, to the extent the sex was nonconsensual, the allegations fell within the intentional tort exception to the FTCA, § 2680(h), and that, to the extent the sexual conduct was consensual, the government had no duty under state law to prevent that conduct. The district court granted the motion on August 5, 1998, and entered a final order on August 7. The district court based its decision on the ground that

3

Leleux's negligence claims arose out of a sexual battery (although it accepted Leleux's claim that the sex was consensual) and thus came within an exception to government liability under the FTCA.

The court's conclusion was in large part based on Garcia v. United States, 776 F.2d 116 (5th Cir. 1985), a case involving negligent supervision of a military recruiter who allegedly engaged in nonconsensual sex with a young potential recruit. In Garcia, this court concluded that the exclusion of claims arising out of assault or battery covered "claims . . . that sound in negligence but stem from a battery [committed] by a Government employee." Id. at 117 (citing United States v. Shearer, 473 U.S. 52, 55 (1985)). The district court in the case at bar relied on this decision when it opined that the FTCA and this court "are clear as to the well-defined and relatively narrow circumstances in which claims may be lodged against the United States" and that waivers of sovereign immunity should be narrowly construed. On August 17, 1998, Leleux timely appealed.

## II

We review the dismissal of a complaint under § 2680(h) *de novo*. See Truman v. United States, 26 F.3d 592, 593 (5th Cir. 1994). Of course, dismissal for failure to state a claim under Rule 12(b)(6) is also reviewed *de novo*. See id. When considering a Rule 12(b)(6) dismissal, we construe the complaint liberally in favor of the plaintiff, taking all facts as true. See Lowrey v. Texas A&M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997). Since a Rule 12(b)(6) motion is viewed with disfavor and rarely granted, a complaint may not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. (citations omitted).

Leleux alleges that Sistrunk knew or should have known that he was infected with genital herpes. She additionally argues that, in either case, the Navy negligently allowed Sistrunk to transmit the disease to her. In dismissing the case, the district court ruled that the knowing transmission of a sexual disease during intercourse constitutes battery, and that Leleux's claim was thus precluded by the intentional tort exception to the FTCA. While we agree with this analysis insofar as it applies to the *knowing* transmission of genital herpes, the record in this case does not clearly show that

4

Sistrunk knew that he had genital herpes. Leleux alleges in the alternative that he *should have known* of his condition, and, if so, we must engage a different approach to this case. Regardless, we agree with the district court that Leleux failed to state a claim under Rule 12(b)(6). We will address both scenarios—Sistrunk as a knowing actor and Sistrunk as one who "should have known"—and explain our conclusions seriatim below.

## III

### A

Assuming that Sistrunk knew that he was infected with genital herpes, we must first determine whether consensual sexual intercourse can constitute a battery under the FTCA. As a starting point, we note that the limited waiver of sovereign immunity contained in the FTCA should be narrowly-construed in favor of the United States. See, e.g., Lane v. Peña, 518 U.S. 187, 192 (1996) ("[A] waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign."); Linkous v. United States, 142 F.3d 271, 275 (5th Cir. 1998) ("Courts must strictly construe all waivers of the federal government's sovereign immunity, and must resolve all ambiguities in favor of the sovereign."); Price v. United States, 69 F.3d 46, 49 (5th Cir. 1995) ("[W]aivers of sovereign immunity are to be construed narrowly."). Similarly, conditions and limitations upon which the United States consents to be sued should be construed narrowly. See, e.g., Lehman v. Nakshian, 453 U.S. 156, 160-61 (1981) (holding that exceptions to the limitations and conditions upon which the Government consents to be sued "are not to be implied"); Bank One Texas, N.A. v. United States, 157 F.3d 397, 402 (5th Cir. 1998) (holding that the statute of limitations must be construed strictly in favor of the Government); Atorie Air, Inc. v. FAA, 942 F.2d 954, 958 (5th Cir. 1991) (same).

In essence, the complaint presents a cause of action for battery, notwithstanding Leleux's protestations that the sexual intercourse between them was consensual and, therefore, not battery.

5

Although never specifically treated by this court before,[1] the principle that the unwanted transmission of a venereal disease during consensual sex vitiates the consent is a standard accepted by a variety of secondary sources. We hereby adopt this standard for the Fifth Circuit and hold that, where an individual fraudulently conceals the risk of sexually transmitting a disease, that action vitiates the partner's consent and transforms consensual intercourse into battery for the purposes of § 2680(h).[2]

The Restatement of Torts provides that, where a person bases consent on a "substantial mistake concerning the nature of the invasion of his interests or the extent of the harm to be expected from it and the mistake is known to the other[,] . . . the consent is not effective for unexpected invasion or harm." RESTATEMENT (SECOND) OF TORTS § 892B(2) (1979). In other words, where an action would constitute a battery in the absence of consent, the fraudulent procurement of consent eliminates the witting agreement. See id. cmt. d (explaining that an actor, "[b]y deliberately taking advantage of the other's ignorance . . . takes his chances that the consequences that he knows that the other does not expect will occur, and he becomes liable as if no consent had been given"). Indeed, the Restatement's illustration of this principle mirrors the facts of this case: "A consents to sexual intercourse with B, who knows that A is ignorant of the fact that B has a venereal disease. B is subject to liability to A for battery." Id. cmt. e, illus. 5; see also W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 18, at 120 (5th ed. 1984) ("[A] woman who consents

---

[1] At least one of our sister circuits has ruled on this issue. See Desnick v. American Broadcasting Co., 44 F.3d 1345, 1352 (7th Cir. 1995) ("[W]e know that to conceal the fact that one has a venereal disease transforms 'consensual' intercourse into battery."); see also Kathleen K. v. Robert B., 198 Cal. Rptr. 273, 276-77 (Cal. Ct. App. 1984) ("[C]onsent to sexual intercourse [is] vitiated by one partner's fraudulent concealment of the risk of infection with venereal disease.").

[2] Leleux relies on Louisiana's definition of battery to suggest that the exemption for battery does not apply in Louisiana. She is mistaken. It is a matter of federal law, not state law, whether the exception for battery applies. See United States v. Neustadt, 366 U.S. 696, 705-06 (1961); Johnson v. United States, 788 F.2d 845, 815 (2nd Cir. 1986) ("The scope of § 2680(h) is a matter of federal law.").
State law is relevant only in determining the standard of *negligence* to apply in an FTCA case that has not been exempted under § 2680(h). See § 1346(b)(1); Johnson v. Sawyer, 47 F.3d 716, 727 (5th Cir. 1995) (en banc) (holding that a negligence claim under the FTCA must allege the breach of a state-law duty); infra Part IV.

6

to intercourse may still recover [for battery] when she is infected with [a] venereal disease, although nothing was said about it.").

In addition, public policy considerations weigh heavily in favor of our adopting this standard. Were we to hold that the knowing (but furtive) transmission of a sexual disease could take place in a consensual setting, we would open Pandora's box. Such a holding would mean that, as long as both individuals consented, one partner, carrying the AIDS virus, could knowingly infect the other with no legal repercussions.[3]

Applying the Restatement's standard to this case, Leleux does not state a claim under the FTCA if Sistrunk knew that he was infected with genital herpes when he had sexual intercourse with her. If Sistrunk knew of his condition, he committed a battery, and his conduct, though reprehensible, is exempted from the Government's waiver of sovereign immunity by § 2680(h).

**B**

Even if Sistrunk knew of his infection, making his action a battery, we must nonetheless address whether the Navy committed any negligent acts separate and apart from the battery that provide a cause of action for Leleux. A series of decisions distinguishes negligent acts that may be pursued under the FTCA from intentional acts that may not. Leleux's most credible argument is along these lines: in this appeal, she adverts that her claims sound in negligence unrelated to the battery, namely, that the Government negligently inflicted emotional distress upon her and negligently allowed her to contract a venereal disease. Even a cursory review of controlling cases, however, demonstrates the shaky foundation of this claim. A searching read of those cases confirms that her claims of negligence are exempted under § 2680(h) because they stem from a battery.

---

[3] Although it in no way binds this court, we find instructive the Louisiana Supreme Court's view of the propriety of considering public policy factors in a case such as this. That court, in a case cited by Leleux to argue a duty on the part of the United States, recently encouraged the consideration of public policy ramifications in judicial decisions impacting social issues. See Meany v. Meany, 639 So.2d 229, 233 (La. 1994) ("In determining whether to impose a duty in a particular situation, the court may consider various moral, social, and economic factors.").

7

The gravamen of Leleux's complaint is that she was injured by the contraction of a venereal disease from Sistrunk. Leleux's claims that the Navy allegedly failed to prevent her injury are not sufficiently distinct from the battery perpetrated by Sistrunk; the claims thus "arose out of" the battery. The Supreme Court first addressed this issue in United States v. Shearer, 473 U.S. 52 (1985) (plurality opinion). In Shearer, a plurality of Justices held that § 2680(h) bars not only claims for assault or battery but also claims for negligence of government employees in facilitating or not preventing the assault or battery. See 473 U.S. at 55-56. The Court held that the FTCA bars "claims . . . that sound in negligence but stem from a battery committed by a Government employee." Id. at 55. The Fifth Circuit adopted a broad reading of the Shearer plurality in specific terms,[4] see Garcia, 776 F.2d at 118, and that holding remains the law of the circuit. Compare McNeily v. United States, 6 F.3d 343, 347 (5th Cir. 1993) ("[A] plaintiff cannot avoid the reach of § 2680(h) by framing his complaint in terms of negligent failure to prevent the excepted harm.") with Atorie Air, 942 F.2d at 957-58 (barring actions). Indeed, we have held explicitly that "causes of action distinct from those excepted under § 2680(h) are nevertheless deemed to be barred when the underlying governmental conduct 'essential' to the plaintiff's claim can fairly be read to 'arise out of' conduct that would establish an excepted cause of action." Id. at 958. Such is exactly the case with respect to Leleux's negligence claims.[5]

---

[4] Ironically, the Garcia court anticipated the events of Sheridan v. United States, 487 U.S. 392 (1988), when it observed that "[a]rguably, the 'arising from' language becomes ambiguous when the asserted claim is for a negligent act which precedes the assault." See 776 F.2d at 118. Was the negligence in Sheridan antecedent to the assault or did it arise from the assault? The Supreme Court held the former, while the Garcia panel suggested that the latter was a better reading. Ultimately, the panel skirted the issue by observing that, since ambiguities are to be resolved in favor of the Government, no liability should attach in such a situation. See id.; infra notes 5-6 and accompanying text.

[5] In her complaint, Leleux alleges negligent training and supervision on the part of the Navy. See infra note 7 & accompanying text. Although her brief and oral argument to this court did not explicitly carry forward that claim, the tenor of her arguments on appeal suggests that she hopes to shoehorn a negligent training and supervision claim into the rubric of the other negligence claims that she did brief and argue to us. To the extent that her arguments on appeal do represent such a retooling of her negligent training and supervision claim, Shearer-Garcia likely precludes her success. Language in Shearer, see 473 U.S. at 55, and Garcia, see 776 F.2d at 117-18, discussing the strong likelihood that such a claim would "arise from" the underlying excluded tort, would seem to bar such

8

Although Shearer-Garcia, together reflecting the view that any claim of negligence arising directly out of an exempted tort is also exempted, might be sufficient to resolve Leleux's claim, two other cases supplement our understanding and impact our review. First, in Sheridan v. United States, 487 U.S. 392 (1988), the Supreme Court allowed a negligence claim to proceed where a battery had occurred because the Government had breached a duty to the plaintiff "entirely independent of [the tortfeasor's] employment status." 487 U.S. at 401. The Government was potentially negligent toward the plaintiff by not restraining an intoxicated, armed serviceman where it had undertaken a Good Samaritan duty so to do. See id.

Consequently, Sheridan stands for the principle that negligence claims related to a Government employee's § 2680(h) intentional tort may proceed where the negligence arises out of an independent, antecedent duty unrelated to the employment relationship between the tortfeasor and the United States.[6] The Sheridan Court was explicit that any tortious conduct committed *outside the scope of employment* is barred by the FTCA. See id. Only negligent conduct, undertaken within the scope of employment and unrelated to an excluded tort under § 2680(h), may form the basis of a

---

a claim, but Sheridan expressly declined to decide whether negligent hiring, supervision, or training may ever support FTCA liability for a foreseeable battery. See 487 U.S. at 403 n.8; cf. id. at 406-08 (Kennedy, J., concurring in the judgment) (opining that negligent supervision claims in assault or battery cases, as with all other claims concerning the government's employment relationship with the tortfeasor, should always be barred). But cf. Brock v. United States, 64 F.3d 1421, 1425 (9th Cir. 1995) (declining to accept Justice Kennedy's reasoning and allowing such a claim). Regardless, we are unpersuaded by her arguments.

[6] Justice White, a member of the Shearer plurality, observed in a concurring statement that Shearer did not address whether a *tortfeasor's* acting in the scope of his Government employment made a difference with respect to § 2680(h) when third-party negligence was alleged. See Sheridan, 487 U.S. at 403-04 (White, J., concurring).

Without belaboring a minor point, suffice it to say that Justice White's joining the majority in Sheridan supports the view that (1) a Government employee acting *outside the scope of his employment* always falls outside the purview of the FTCA; (2) a Government employee acting *within the scope of his employment* but committing a battery commits a tort excepted under § 2680(h); (3) Government employees acting within the scope of their employment who are negligent in a duty to a third party potentially expose the Government to liability under the FTCA; and (4) liability is independent of the batterer's employment status.

His concurrence in Sheridan undercuts the Shearer plurality only to the extent that Shearer can be read to apply to all negligent acts related to a battery, not with respect to any holding regarding the batterer's employment status.

9

cause of action. See id.; cf. Franklin v. United States, 992 F.2d 1492, 1498 (10th Cir. 1993); Sheridan v. United States, 969 F.2d 72, 75 (4th Cir. 1992); Guccione v. United States, 878 F.2d 32, 33 (2nd Cir. 1989); Bembenista v. United States, 866 F.2d 493, 498 (D.C. Cir. 1989). But cf. Brock v. United States, 64 F.3d 1421, 1425 (9th Cir. 1995) (declining to follow Justice Kennedy's concurrence in Sheridan and holding that § 2680(h) does not bar suits based on the negligent supervision of government employees).

Under Sheridan, Leleux's claims patently fail. Each of the breaches of duty that she alleges in her complaint is related to the employment relationship between the United States and Sistrunk. Cf. Complaint, ¶ 25(a) (negligent failure to inform Leleux of regulations covering the conduct of Navy personnel); ¶ 25(b) (negligent failure to protect Leleux from Sistrunk's misuse of his position); ¶ 25(c) (negligent training and supervision); and ¶ 25(d) (negligent "authoriz[ation] of Sistrunk's conduct). Leleux does not allege that the Government had any duty to protect her independent of its employment relationship with Sistrunk; Leleux references no regulation or duty assumed by the Navy that concerns the Navy's responsibility for the welfare of third parties.[7] See infra Part IV.

The second relevant decision also does not save Leleux's case. In Truman, a panel of this court held that, where a complaint could fairly be read to state a claim for a tort not enumerated in § 2680(h), it was not statutorily barred. See 26 F.3d at 596-97. Seizing upon this holding, Leleux argues that the negligent transmission of a venereal disease and the negligent infliction of emotional distress are not exempted since they are not among the torts listed in § 2680(h). Her argument is unsound because, in Truman, the plaintiff alleged that the tortfeasor was acting in the scope of his employment when he committed a tortious act upon her, see id. at 593, 595; indeed, liability under the FTCA requires such a pleading. See § 1346(b). Leleux, however, never argues that Sistrunk

---

[7] Additionally, the cases that Leleux cites and the arguments that she makes in her Reply Brief are inapposite because, to the extent that (1) tort liability lies where a party "increase[s] the risk of harm" to another, Hastings v. Baton Rouge Gen. Hosp., 498 So.2d 713, 720 (La. 1986), and (2) the Government can be said to have increased the risk of harm to Leleux by negligently supervising Sistrunk, Leleux still cannot overcome the fact that the ultimate harm—transmission of a venereal disease—arose from a battery and is thus barred by § 2680(h).

10

acted in the scope of his employment when he engaged in sexual relations with her; she instead seeks to recover under the FTCA merely because Sistrunk "happens to receive federal paychecks."[8] Sheridan, 487 U.S. at 397 (citing with approval Sheridan v. United States, 823 F.2d 820, 824 (4th Cir. 1987) (Winter, C.J., dissenting)). Leleux does, of course, contend that other Naval personnel acted within the scope of their employment and assumed a duty with respect to Leleux, but her claim ultimately still fails. The tort for which the Truman plaintiff sought recovery was conceptually distinct from and did not "arise out of" a tort excluded by § 2680(h). Thus, even though Leleux could potentially have recovered under Truman had she alleged an act in the scope of employment completely unrelated to the underlying excluded tort, she did not do so. Truman is thus inapplicable to Leleux's case. The Navy cannot be held liable under any theory of negligence.

## IV

Leleux argues in the alternative that Sistrunk *should have known* that he was infected with genital herpes.[9] We separately address this issue because knowledge of infection is an essential element in the transformation of consensual sex into a battery under the Restatement's test. If Sistrunk merely should have known that he was infected with genital herpes, then the sex with Leleux was not a battery. Leleux could recover under a theory of negligence, provided that a duty existed to protect Leleux.[10] Finding no such duty under Louisiana law, even if Sistrunk merely should have known of his infection, we affirm the judgment of the district court dismissing the action for failure to state a claim on this alternate ground as well.

There is no duty under Louisiana law on an employer to prevent its employees from transmitting genital herpes during consensual sexual intercourse; consequently, since the law of the

---

[8] Additionally, Leleux's claim should fail because she did not allege these torts—negligent infliction of emotional distress or negligent transmission of a venereal disease—in her complaint. She argues them for the first time in her brief to this court.

[9] Leleux does not argue that Sistrunk simply *did not know* that he was infected, so we need not address a situation in which a sexual partner neither knew nor should have known of an infection.

[10] See supra notes 2, 5.

11

state applies in determining what cause of action may be pursued under the FTCA, see Johnson, 47 F.3d at 727, and Leleux has not alleged the breach of any other relevant duty, her claim would fail on this ground even if § 2680(h) does not bar the suit as a battery.

As the Government observes, the relevant question under the FTCA is whether a state-law duty exists, not whether a court can create or "recognize" one. In this case, the Naval regulations at issue do not establish a duty owed to Leleux under Louisiana law. Cf. Tindall v. United States, 901 F.3d 53, 56 n.8 (5th Cir. 1990) (holding that a federal regulation alone can never establish such a duty). Indeed, the only cases she cites to support her contention that a duty exists under state law either (1) apply only to Sistrunk, see Meany, 639 So.2d at 233, 245 (recognizing the tort of negligent transmission of a venereal disease) or (2) require an employer to prevent the transmission of a venereal disease only where nonconsensual sex undertaken by an employee is involved. See Harkins v. Gauthe, 707 So.2d 1308 (La. Ct. App. 1998) (duty to prevent child molestation); Smith v. Orkin Exterminating Co., 540 So.2d 363 (La. Ct. App. 1989) (duty to prevent rape). Neither of these cases, obviously, involves a *consensual* relationship. Therefore, even if we found a duty to prevent transmission among consensual partners where the infected partner should have known of his condition, it could not reasonably exist here, where there is no allegation that the Navy even knew about Sistrunk's condition. An employer certainly could not be expected to prevent its employee's harm when it had no basis for knowing that such a harm was even possible.

V

Whether Sistrunk knew or should have known that he was a carrier of genital herpes when he infected Leleux, Leleux's complaint fails to state a claim and was properly dismissed under Rule 12(b)(6) as barred by § 2680(h). Although she attempts artfully to avoid this outcome by alleging that the Government committed antecedent negligence, her claim nonetheless fails because this alleged negligence involves actions unrelated to the battery, is not well-pled, and covers conduct either outside the scope of Sistrunk's employment or unrelated to any duty assumed by the Government under Louisiana law. As a result, we AFFIRM the judgment of the district court.

12