**Annette LaFRANCIS, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 3:98CV2055(CFD).**

United States District Court, D. Connecticut.

Sept. 24, 1999.

Chester W. Fairlie, Holth, Kollman, Fairlie & Golembeski, New London, CT, Helen L. McGonigle, Law Office of Helen L. Mcgonigle, Brookfield, CT, for plaintiff.

Brenda M. Green, Assistant United States Attorney, Office of the United States Attorney, New Haven, CT, for defendant.

## RULING ON DEFENDANT'S MOTION TO DISMISS

DRONEY, District Judge.

The amended complaint ("the complaint") in this action seeks damages under the Federal Tort Claims Act (the "FTCA"), 28 U.S.C. § 1346(b)(1). The plaintiff, Annette LaFrancis, brings this action against the defendant, United States of America, claiming negligence resulting in injuries she sustained when she was assaulted by her former husband,

Chief Petty Officer Lance LaFrancis ("Chief LaFrancis").

The defendant filed a motion to dismiss the amended complaint [**Doc. # 8**] pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6). The defendant argues that the Court does not have jurisdiction over this case under the FTCA and that the complaint fails to state a claim upon which relief can be granted. Because the Court finds that it lacks subject matter jurisdiction in this case, the defendant's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) is **GRANTED.**

### Background[1]

During the time of the events alleged in the complaint, the plaintiff was married to Chief Lance LaFrancis, a chief petty officer in the United States Navy stationed at the naval base in Groton, Connecticut. Plaintiff lived with Chief LaFrancis in military housing adjacent to the naval base in Groton. During this time, the U.S. Department of the Navy maintained a Family Advocacy Program ("the FAP"), the purpose of which was to investigate domestic disturbances involving military personnel and members of their family and to make recommendations to the base command for the health, welfare and safety of both the military personnel and for the civilian members of their families.[2]

On April 13, 1995, Chief LaFrancis assaulted the plaintiff. The plaintiff received medical treatment at the base medical center. This incident was then referred to the FAP by Chief LaFrancis' commanding officers so that the FAP could conduct an investigation of the incident and make recommendations to them concerning what action, if any, they should take.

On May 10, 1995, the FAP reported to the command that it had been confirmed that Chief LaFrancis assaulted the plaintiff on April 13, 1995. The FAP recommended that Chief LaFrancis be required to attend an anger management group, individual counseling, and family counseling. However, the complaint alleges, the command failed to require Chief LaFrancis to attend the anger management group or the individual counseling.[3]

Following the April 13, 1995, incident and the May 10, 1995, report and recommendations by the FAP, Chief LaFrancis continued to threaten the plaintiff. According to the complaint, this was known to Chief LaFrancis' commanding officers.

In August, 1995, while Chief LaFrancis was deployed on submarine patrol, he exhibited suicidal behavior and, as a consequence, was removed from the submarine and returned to the base. Following this incident, Chief LaFrancis was admitted to Natchaug Hospital, a psychiatric facility in Willimantic, Connecticut, for diagnosis and treatment. The plaintiff visited Chief LaFrancis on a number of occasions while he was at the psychiatric facility. During these visits, Chief LaFrancis threatened to harm her. Plaintiff reported these incidents to Chief LaFrancis' commanding officers, and told them that she feared Chief LaFrancis would harm her when he was released from the facility. She asked that measures be taken by the command to protect her from Chief LaFrancis upon his release. Prior to his release, a representative of the command allegedly told the plaintiff that the command would issue and deliver a "no-contact order" directing Chief LaFrancis not to return to the residence he and the plaintiff shared upon his release from the psychiatric facility. How-

---

1. The recited background facts are taken from the complaint. For the purpose of deciding the motion to dismiss, the court assumes as true the allegations of the complaint. *See Finnegan v. Campeau Corp.,* 915 F.2d 824, 826 (2d Cir.1990).

2. At oral argument on the motion to dismiss, the plaintiff stated that the program was not available to civilians who had no direct familial relationship to an enlisted person.

3. The complaint is silent as to whether the command required Chief LaFrancis to attend family counseling.

ever, the command did not issue that order.

On August 28, 1995, Chief LaFrancis was released from the psychiatric facility. The next day, he assaulted the plaintiff. The plaintiff claims to have sustained a number of injuries as a result.

The complaint alleges that the commanding officers at the base had "the authority, right, and duty, to issue orders affecting, controlling or regulating members of the military under their command in order to instill military discipline." Am. Compl. at ¶ 10. The commanding officers also had the authority, duty, and right "to issue orders to supervise or control a military member under their command with regard to the occurrence and/or risk of the occurrence of spousal maltreatment." *Id.* In addition, it is alleged that the commanding officers "owed a duty and undertook and independent duty to the plaintiff to supervise, retain, and control [Chief] LaFrancis, who was known ... to [be] dangerous and to have exhibited violent behavior towards the plaintiff." Am.Compl. at ¶ 11.

The plaintiff alleges that the injuries she sustained as a result of the August 29, 1995, assault by Chief LaFrancis were caused by the negligence and carelessness of Chief LaFrancis' commanding officers. Specifically, the plaintiff alleges that the command failed to issue the appropriate orders, follow the recommendations of the FAP, and otherwise take the appropriate steps to ensure that Chief LaFrancis did not assault her.

*Discussion*

**I. Fed.R.Civ.P. 12(b)(1) Standard**

■ When considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the allegations of the complaint are construed in the plaintiff's favor. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds, Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984); *Atlantic Mut. Ins. Co. v. Balfour Maclaine Intern. Ltd.,* 968 F.2d 196, 198 (2d Cir.1992). Once the question of subject matter jurisdiction has been raised, the burden of establishing subject matter jurisdiction rests on the party asserting jurisdiction. *See Thomson v. Gaskill,* 315 U.S. 442, 446, 62 S.Ct. 673, 86 L.Ed. 951 (1942).

**II. The FTCA**

**A. In General**

■ The United States, as sovereign, is generally immune from suit unless it waives that immunity. *See United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941) (citations omitted). However, the FTCA waives such immunity for certain actions against the government. As the United States Supreme Court has stated, "The [FTCA] is a limited waiver of sovereign immunity, making the Federal Government liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment." *United States v. Orleans,* 425 U.S. 807, 813, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976). "The FTCA gives federal district courts jurisdiction over claims against the United States for money damages 'for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'" *Sheridan v. United States,* 487 U.S. 392, 398, 108 S.Ct. 2449, 101 L.Ed.2d 352 (1988) (quoting 28 U.S.C. § 1346(b)); *Guccione v. United States,* 847 F.2d 1031, 1033 (2d Cir.), *re'hrg. denied* 878 F.2d 32 (2d Cir. 1989).

**B. The Intentional Tort Exception and the Independent Affirmative Duty Doctrine**

Under 28 U.S.C. § 2680(h), intentional torts committed by federal employees are

specifically excluded from the waiver of governmental immunity contained in the FTCA. The U.S. Supreme Court has interpreted this intentional torts exclusion to also apply to related negligence claims. In *United States v. Shearer*, 473 U.S. 52, 54, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985) Chief Justice Burger, in writing for a plurality of the Court stated: "Section 2680(h) does not merely bar claims for assault or battery; in sweeping language it excludes any claim arising out of assault or battery. We read this provision to cover claims like respondent's that sound in negligence but stem from a battery committed by a Government employee." *Id.*, at 55, 105 S.Ct. 3039; *see also Guccione*, 847 F.2d at 1034.

Following the decision in *Shearer*, the Supreme Court further considered the scope of the intentional torts exclusion contained in Section 2680(h) in *Sheridan v. United States*, 487 U.S. 392, 108 S.Ct. 2449, 101 L.Ed.2d 352 (1988). In considering the limit Section 2680(h) imposed on the grant of jurisdiction contained in the FTCA, the *Sheridan* Court stated: "[A]mong other limitations, the Act. also provides that this broad grant of jurisdiction shall not apply to any claim arising out of assault, battery or other specified intentional torts." *Sheridan*, 487 U.S. at 398, 108 S.Ct. 2449 (internal quotations omitted) (quoting 28 U.S.C. § 2680(h)); *see also Shearer*, 473 U.S. at 54, 105 S.Ct. 3039 and *Guccione*, 847 F.2d at 1033. However, the *Sheridan* Court also recognized that the FTCA would permit claims for injury resulting from an assault or battery that were the product of independent acts of negligence by a government official. 487 U.S. at 398, 108 S.Ct. 2449. As the Fifth Circuit stated in applying *Sheridan*, "[O]nly negligent conduct, undertaken within the scope of employment and unrelated to an excluded tort under § 2680(h), may form the basis of a cause of action." *Leleux v. United States*, 178 F.3d 750, 757 (5th Cir.1999) (citations omitted).

In *Sheridan*, the plaintiffs had been shot by an off-duty, intoxicated serviceman near the Bethesda Naval hospital and brought an FTCA action against the government seeking damages for their injuries. The plaintiffs alleged that the United States was liable because of the negligence of three naval corpsmen who had previously observed the assailant as armed and extremely intoxicated, but allowed him to leave the naval hospital with a weapon.

The Supreme Court held that the intentional tort exception did not bar the plaintiffs' FTCA action because, although the assailant was an employee of the United States, his employment status "ha[d] nothing to do with the basis for imposing liability on the Government." *Sheridan*, 487 U.S. at 402, 108 S.Ct. 2449. The Court reached this decision, in part, because the negligence of the three naval corpsmen "may furnish a basis for Government liability that is entirely independent of [the assailant's] employment status." *Id.* As the D.C. Circuit Court of Appeals stated in interpreting *Sheridan*, "the government's liability resulted not from the mere fact that it was [the tortfeasor's] employer, but rather from the fact that it had undertaken 'good Samaritan' responsibilities to ensure that nobody on the naval base possessed a firearm without authorization and that visibly drunken and dangerous persons were restrained." *Bembenista v. United States*, 866 F.2d 493, 497 (D.C.Cir.1989) The *Sheridan* Court also emphasized that the "conduct [of the three naval corpsmen] could cast liability upon the Government even if the person they had permitted to leave the hospital with a weapon had no connection whatever with the United States." *Sheridan*, 487 U.S. at 402, 108 S.Ct. 2449. The Supreme Court went on to say that "[I]ndeed, in a case in which the employment status of the assailant has nothing to do with the basis for imposing liability on the Government, it would seem perverse to exonerate the Government because of the happenstance that [the assailant] was on the federal payroll." *Sheridan*, 487 U.S. at 402, 108 S.Ct. 2449.

Following the *Shearer* decision, but before *Sheridan*, the Second Circuit decided *Guccione v. United States*, 847 F.2d 1031, 1033 (2d Cir.), *re'hrg. denied* 878 F.2d 32 (2d Cir.1989). In *Guccione*, the Second Circuit stated that negligence claims independent of an intentional tort may be brought under the. FTCA. In *Guccione*, although the court affirmed the dismissal, it stated "[D]espite the broad reading given to section 2680(h)'s 'arising out of' language, we have suggested that it may not bar mixed claims of negligence and intentional conduct in the relatively uncommon case in which the negligence alleged 'was independent of the government's supervision of its employees.'" *Guccione*, 847 F.2d at 1036 (quoting *Johnson v. United States*, 788 F.2d 845, 853 fn. 3 (2d Cir.), *cert. denied*, 479 U.S. 914, 107 S.Ct. 315, 93 L.Ed.2d 288 (1986)); *see also Leleux*, 178 F.3d at 757.

Shortly after the Supreme Court's decision in *Sheridan*, the plaintiff in *Guccione* filed a petition for rehearing with the Second Circuit Court of Appeals on the basis that, under *Sheridan*, his claim against the government was viable. The Second Circuit, however, concluded that *Sheridan* did not help the plaintiff because "[the alleged tortfeasor's] role in relation to the United States is at the heart of Guccione's claim" and therefore, any claim of negligent supervision on the part of the government was not entirely independent of the employment relationship between the tortfeasor and the government. *Guccione*, 878 F.2d at 32.

These decisions, and others, have resulted in the development of what has become known as the "independent affirmative duty" doctrine. *See Guccione*, 847 F.2d at 1036; *see also Bembenista*, 866 F.2d at 497–498; *Doe v. United States*, 838 F.2d 220, 222–224 (7th Cir.1988); *Harris v. United States*, 797 F.Supp. 91, 95 (D.P.R. 1992); *Doe v. Scott*, 652 F.Supp. 549, 551–552 (S.D.N.Y.1987). Applying this doctrine, the Fifth Circuit has summarized that: "*Sheridan* stands for the principle that negligence claims related to a Government employee's intentional tort may proceed where the negligence arises out of an independent, antecedent duty unrelated to the employment relationship between the tortfeasor and the United States." *Leleux v. United States*, 178 F.3d 750, 757 (5th Cir.1999). In the instant case, however, the allegations contained in the plaintiff's complaint do not fit within the "independent affirmative duty" doctrine, and, thus are barred by the "arising out of" intentional torts prohibition in the FTCA. The following decisions, applying *Sheridan*, are consistent with this analysis.

In *Bembenista v. United States*, 866 F.2d 493 (D.C.Cir.1989), the plaintiff was a blind patient at the Walter Reed Army Medical Center, undergoing treatment for diabetes-related complications. She was semi-comatose as a result of over-medication by the hospital staff. While at the medical center, she was repeatedly raped by one of the army medical staff while medicated. The D.C. Circuit Court of Appeals allowed the plaintiff to maintain an FTCA negligence action against the government and rejected the government's argument that the intentional tort exception should bar the action. *Id.* at 497–498. The court held that the hospital owed the plaintiff a protective duty of care which "arose out of its special [hospital-patient] relationship with Mrs. Bembinista; '[t]his theory of liability does not depend on the employment status of the intentional tortfeasor.'" *Id.* at 498 (quoting *Sheridan*, 487 U.S. at 407, 108 S.Ct. 2449, Kennedy, J. concurring). As a result, the court determined that the hospital would have been liable even if the plaintiff had been assaulted by a private person, not connected with the government. *Id.*

In *Doe v. United States*, 838 F.2d 220 (7th Cir.1988), the plaintiffs were parents of minor children who had been sexually molested while in the care of the Air Force base day care center. The Seventh Circuit Court of Appeals permitted the plaintiffs to maintain an FTCA negligence action

against the government and rejected the government's argument that the intentional tort exception barred the action. *Id.* at 225. The court held that the government had assumed the duty of protecting the children prior to the assault and that the injury to the children resulted from the breach of that duty. *Id.* at 223. The duty owed to the parents and the children arose not from the employment relationship with the intentional tortfeasor, but from a special duty of care assumed by the government over the operation of the day care center. The *Doe* court recognized that the "Plaintiffs may prevail in this case without ever proving who committed the assaults, because the claim arises from the relationship between the government and the victim, not the government and the tortfeasor." *Id.* at 223.[4]

In *Gess v. United States,* 952 F.Supp. 1529 (M.D.Ala.1996), the plaintiffs were twelve patients, eleven of whom were infants, poisoned by an Air Force medical technician while they were being treated at the Air University Hospital at Maxwell Air Force Base in Montgomery, Alabama. The plaintiffs brought an FTCA negligence action against the government. After a bench trial, the court concluded that the plaintiffs' claims were not barred by the intentional tort exception because the theory of liability underlying the negligence claims did not depend upon the employment status of the technician. *Id.* at 1551. The court reached this conclusion because, under Alabama state law, the government owed the plaintiffs a general duty of care in operating a hospital. and because the government had voluntarily adopted regulations concerning the operation of the hospital which generally benefited the patients. *Id.* The court found that the case was analogous to the situation in *Sheridan* stating "... the defendant in the instant case owed a duty to the plaintiffs independent of [the assailant's] status as an employee." *Id.*

In *Harris v. United States,* 797 F.Supp. 91 (D.P.R.1992), the plaintiffs were students allegedly mistreated by a teacher at a Naval base school. The court allowed the plaintiffs to maintain an FTCA negligence action against the government and rejected the government's argument that the intentional tort exception barred the action. *Id.* at 95. The court stated: "[W]hen examining the applicability of this exception, close attention must.be paid to the specific conduct at issue to determine whether the liability arises from the deficient supervisory practices or from a duty which is separate and apart from the employment relationship." *Id.* The court held that the intentional tort exception did not bar the action because the government owed a duty to the plaintiffs which was created by its running of a school and assuming custody of the children. That duty was "independent of the assailant's employment status and existed prior to the commission of the tort." *Id.*

Finally, the Fifth Circuit in *Leleux v. United States,* 178 F.3d 750 (5th Cir.1999), affirmed the dismissal of an FTCA negligence action on the basis that the case was barred by the intentional tort exception and rejected the plaintiff's argument that the independent duty doctrine applied. *Id.* at 757–758. The plaintiff was a female Navy recruit who was seduced by her recruiting officer and engaged in a sexual relationship with him, which resulted in her contracting genital herpes. The court found that the sexual relationship was not consensual and therefore constituted battery, because the plaintiff did not know that the officer had herpes. *Id.* at 755. The court also concluded, however, that the, plaintiff's claims that the Navy failed to prevent her injury were not sufficiently distinct from the battery, and thus "arose out of" the battery. *Id.* In rejecting the plaintiff's argument that the government owed her an independent duty, the court concluded that "[E]ach of the breaches of

4. Although *Doe* was decided prior to the Supreme Court's decision in *Sheridan,* the Court

in *Sheridan* cited *Doe* approvingly. *Sheridan,* 487 U.S. at 402 fn. 7, 108 S.Ct. 2449.

duty alleged in her complaint is related to the employment relationship between the United States and [the assailant]." *Id.* at 757. The plaintiff had alleged negligent failure to inform her of the regulations covering the conduct of Navy personnel; negligent failure to protect her from her assailant's misuse of his position; negligent training and supervision; and, negligent authorization of her assailant's conduct. *Id.* The court concluded that the plaintiff had failed to allege a duty owed to her by the Navy which was independent of the employment relationship the Navy had with the assailant. *Id.*

## III. The Instant Case

In the instant case, the plaintiff contends that the Navy owed her a duty to protect her that was independent of Chief LaFrancis' employment status with the Navy and, thus, her claim is not barred by Section 2680(h). For the following reasons, however, the Court concludes that the asserted duty to her from the Navy is dependent upon her husband's employment status with the government and, therefore, her claim is barred by Section 2680(h).

In *Bembenista, Doe, Gess,* and *Harris,* the courts concluded that the plaintiffs' claims were not subject to the intentional tort exception to the FTCA because the government owed the plaintiffs state law duties which were independent of the assailants' employment status with the government. In each of those cases, the government was found to have a duty to protect the people in their care from any assailant, regardless of the identity of the assailant or his employer, because the government had a duty to protect them from harm based upon the nature of the service the government provided them.

In the instant action, the employment relationship of Chief LaFrancis with the Navy is central to the claim of a duty running to the plaintiff and breach of that duty. Unlike the factual situations in *Bembenista, Doe, Gess,* and *Harris,* the control over Chief LaFrancis by his superiors was dependent upon that employment relationship. Without the employment relationship, the Navy would not have had the authority to supervise the conduct of Chief LaFrancis or to issue the "no contact order".

The plaintiff also claims that the defendant had an "independent duty" to follow the recommendations of the FAP following the April 13, 1995, assault. However, the services of the FAP were only available to Navy personnel and their immediate families; if the plaintiff had been married to a civilian, she would not have been eligible to participate in the FAP. Moreover, the recommendations by the FAP to the command relied on the control the Navy had over Chief LaFrancis by virtue of his employment with the Navy. Accordingly, the plaintiff has not alleged a duty independent of her husband's employment status with the defendant in this respect either.

The plaintiff also argues that the independent duty doctrine should be applied in this case because the orders which were given or should have been given to Chief LaFrancis did not relate to his duties and responsibilities as a Chief Petty Officer. This is too narrow a construction of Chief LaFrancis' duties and responsibilities or the role of his superiors in supervising his conduct. Military personnel, unlike private sector employees, are subject to substantially more control and discipline by their supervising officers outside of their duties during their workday. This increased supervision, control, and responsibility is important to the nation's maintenance of its military forces and the discharging its obligation to provide national security. The alleged orders in the instant case concerning Chief LaFrancis were not independent of his status as a Naval Chief Petty Officer, but a part of the relationship between him and his supervisors and the performance of his duties in the Navy.

Finally, in the instant case, as in *Leleux*, the plaintiff's claims that the Navy negligently failed to exercise control over Chief LaFrancis and issue orders designed to prevent him from assaulting her are not sufficiently distinct from Chief LaFrancis' intentionally tortious conduct. Thus, those claims arise out of an intentional tort and are barred by Section 2680(h).

### Conclusion

Therefore, the intentional tort exception of section 2680(h) bars this FTCA action.[5] Accordingly, the defendant's motion to dismiss the complaint [**Doc. # 8**] is **GRANTED**. The Clerk is ordered to close this case.

SO ORDERED.

---

**5.** Because the Court concludes that the plaintiff's theory of duty running to her is dependent upon Chief LaFrancis' employment status with the Navy, it need not reach the question of whether the Connecticut law would recognize a duty to her from his superiors. Also, the Court does not address the applicability of the discretionary act exception or whether the plaintiff has stated a claim upon which relief can be granted.