Argued and submitted November 7, 2014, affirmed February 11, petition for review denied June 4, 2015 (357 Or 324)

Judy JOHNSON,
a pseudonym,
*Plaintiff-Respondent,*

*v.*

Joe JONES,
a pseudonym,
*Defendant-Appellant.*

Multnomah County Circuit Court
110505898; A151870

344 P3d 89

Mark R. Sandri argued the cause for appellant. With him on the opening brief were Kevin O'Connell, Hagen O'Connell LLP, and Jaculin L. Smith. With him on the reply brief were Kevin O'Connell and Hagen O'Connell LLP.

Steven E. Turner argued the cause and filed the brief for respondent.

Before Lagesen, Presiding Judge, and Haselton, Chief Judge, and Wilson, Judge pro tempore.

HASELTON, C. J.

## HASELTON, C. J.

Defendant appeals a judgment in an action for battery and negligence arising from an incident in which defendant engaged in unprotected sexual intercourse with plaintiff without disclosing that he carries the herpes simplex virus-2 (HSV-2), commonly known as genital herpes. Plaintiff consequently became infected with genital herpes and brought this action. Defendant argues, *inter alia*, that the trial court erred in denying his motion for a partial directed verdict on the battery claim on the ground that there was insufficient evidence of the element of intent.[1] More specifically, defendant contends that plaintiff was required, and failed, to prove that he intended to infect her with genital herpes. As explained below, the requisite intent is the intent to subject another to offensive contact, regardless of whether that contact results in physical harm. In the totality of the circumstances of this case, a jury could find that defendant acted with that intent. Accordingly, we affirm.

In reviewing the denial of a motion for a directed verdict, we will set the verdict aside only if there is no evidence from which a jury could have found the facts necessary to support its verdict, viewing the evidence, including all reasonable inferences, in the light most favorable to the nonmoving party. *Brown v. J.C. Penney Co.*, 297 Or 695, 705, 688 P2d 811 (1984). We therefore recount the relevant facts—which, given the nature of this case, include personal information about the parties, as well as the details of their sexual encounter—in the light most favorable to plaintiff.

Defendant is a retired dentist.[2] He has genital herpes, an incurable virus, and has been aware of that condition since he was diagnosed in 1991. Defendant experienced outbreaks over the years before he met plaintiff, but never took antiviral medication or sought other medical treatment. Before his encounter with plaintiff, defendant always disclosed his genital herpes to prospective sexual partners before sexual intercourse.

---

[1] At oral argument, defendant acknowledged that his other assignment of error, pertaining to the jury instruction on battery, is unpreserved. Accordingly, we do not review that unpreserved challenge.

[2] Both parties are litigating this case under assumed names.

Plaintiff is also a dental professional. Before her encounter with defendant, plaintiff did not have genital herpes.

Defendant and plaintiff met, in the spring of 2010, through an online dating website aimed at singles who are seeking a long-term relationship. They went on a few dates, and each was amenable to seeing more of the other. At the time, defendant was 69 years old and plaintiff was 49. The parties never discussed STIs (sexually transmitted infection). Thus, defendant knew that plaintiff was unaware that he had genital herpes—and he gave her no reason to think that he might have that condition.

On the evening of May 25, defendant came to plaintiff's house. They started kissing in the kitchen and, after it became clear that they were going to have sex, plaintiff told defendant that she wanted him to wear a condom. Defendant agreed, and they proceeded to the bedroom. Plaintiff, expecting that they would engage in foreplay before a condom would become necessary, opened a drawer and showed defendant where the condoms were located. After disrobing, plaintiff laid down on the bed and, to her surprise, defendant quickly got on top of her and initiated unprotected oral sex by putting his penis in plaintiff's mouth, which continued until defendant initiated vaginal intercourse, also without a condom.

After the sex was over, plaintiff felt "a little bit bizarre" because defendant was inattentive and had become "quiet and mute." She attempted to break the silence by asking defendant whether he thought they had chemistry. After a long pause, he replied "I don't know"—and then told her that he had genital herpes. Plaintiff panicked and became angry that defendant had not previously disclosed his genital herpes to her, especially given defendant's medical background. Defendant responded, "Don't worry, I'm not having any lesions," and told plaintiff that he had "a couple phone numbers [he could] give [her] for counseling" and that she should "see a doctor as soon as possible." Plaintiff "kicked him out of the house."

Plaintiff, who knew from her professional training that genital herpes is extremely contagious, immediately

sought medical advice and treatment. Unfortunately, however, she did, in fact, contract the virus as a result of her encounter with defendant. Although initial testing was inconclusive—genital herpes has an incubation period and is not necessarily detectible immediately after transmission—plaintiff experienced a sore throat, a symptom of a new genital herpes infection. Then, within two weeks of the encounter, plaintiff experienced a "major severe genital outbreak, difficulty urinating, difficulty walking, [and] a lot of pain," and, eventually, tested positive for genital herpes.

During the first several months of her infection, plaintiff underwent daily antiviral therapy, which reduces the incidence of outbreaks. However, she ceased the antiviral therapy due to its side effects, which, for plaintiff, included "considerable hair loss," insomnia, and weight gain. Plaintiff, who "feels * * * it will be very difficult for her to find a partner in her future that will accept her," has experienced emotional distress, depression, and anxiety, in addition to the ongoing health consequences of genital herpes, as a result of her encounter with defendant.[3]

Plaintiff brought this action, alleging claims for negligence and for battery. With respect to the battery claim, plaintiff alleged that defendant knew that he was a carrier of the virus and chose to engage in a sexual relationship with her without disclosing his condition, thereby "intentionally caus[ing] a harmful and offensive touching." At trial, the jury heard extensive testimony about the parties' personal background and medical history, as well as medical expert testimony about the transmission, testing, and treatment of genital herpes.[4]

At the close of the evidence, defendant moved for a directed verdict on the battery claim on two grounds. First, defendant posited that plaintiff's contemporaneous "consent" to the sexual contact precluded the battery claim. Second,

---

[3] People who suffer recurrent genital herpes outbreaks, as plaintiff does, commonly experience symptoms including painful and itchy lesions, rashes, fever, painful urination, swollen lymph nodes, and urethral or vaginal discharge.

[4] Genital herpes is transmitted through skin-to-skin contact, including kissing, oral sex, vaginal and anal intercourse, naked genital-to-genital rubbing, and from mother to baby during birth.

defendant asserted that, with respect to the intent element of that claim, "battery in Oregon requires the defendant to intend to harm," and that plaintiff had failed to prove that defendant "had the intent to give her herpes."

The trial court denied the directed verdict motion, reasoning that battery requires intent "to cause a *harmful or offensive contact*"—not intent to cause the *resulting harm.* (Emphasis added.) The trial court explained:

> "I don't think you need to intend to cause harm for a bat-tery claim. * * * [Y]ou need to take a voluntary act * * * that causes intentionally harmful or offensive contact. It's not necessary that the offensive unpermitted touching caused actual physical harm. It is sufficient if the contact is offen-sive and insulting."

The court further determined that the evidence was legally sufficient to prove such an intent. The jury returned a ver-dict in plaintiff's favor on both the negligence and battery claims, and the trial court's judgment awarded $900,000 in noneconomic damages.[5]

On appeal, defendant challenges the trial court's denial of his motion for directed verdict on the battery claim, maintaining that there was no evidence from which a reasonable jury could conclude that he possessed the req-uisite intent for battery. Defendant reiterates his premise that common-law battery requires an "intent[] to cause the harm" and that plaintiff was required, but failed, to prove that he intended "to *transmit the virus*" to plaintiff. (Emphasis added.)

Plaintiff remonstrates that defendant's position is predicated on a fundamental misunderstanding of the well-established law of civil battery. Specifically, plaintiff asserts, the requisite intent in the circumstances presented here is the intent to subject another to offensive touching, and not the specific intent to cause the *harm* that may result from such touching. Thus, in plaintiff's view, defendant commit-ted a battery—that is, he intentionally caused an offensive

---

[5] Plaintiff sought only noneconomic damages—and sought the same dam-ages on both claims. With respect to negligence, the jury apportioned 75 percent of the fault to defendant and 25 percent to plaintiff.

touching—by engaging in sexual intercourse with plaintiff, aware that he was a carrier of the genital herpes virus, and "not inform[ing] the plaintiff, before they had intercourse, that he had genital herpes."

We agree with plaintiff. Consistent with longstanding precedent on civil battery in Oregon, as well as with factually analogous case law from other jurisdictions, a person who, in circumstances similar to those presented here, knowingly engages in sexual contact without disclosing a known STI to the other person can be liable for battery.

The elements of a battery claim are well established under Oregon law:

> "[T]he conduct which brings about the harm must be an act of volition on the actor's part, *and the actor must have intended to bring about a harmful or offensive contact* or put the other party in apprehension thereof. *It is not necessary that the contact do actual physical harm—it is sufficient if the contact is offensive or insulting.*"

*Bakker v. Baza'r, Inc.*, 275 Or 245, 249, 551 P2d 1269 (1976) (citing 1 Harper & James, *The Law of Torts* 215-17, § 3.3 (1956); Prosser, *Law of Torts* 36, § 9 (4th ed 1971)) (emphasis added). Thus, a "battery is a voluntary act that is intended to cause the resulting harmful *or* offensive contact." *Harris v. Pameco Corp.*, 170 Or App 164, 169, 12 P3d 524 (2000) (internal citations and quotation marks omitted; emphasis added).

We pause to emphasize the disjunctive character of the actionable tort. A battery claim may derive from a contact that is *either* harmful *or* offensive in nature. That is so because "battery redresses injury both to an individual's physical integrity and to an individual's dignitary interests." *Doe v. Lake Oswego School District*, 353 Or 321, 329, 297 P3d 1287 (2013). Consequently, the actionable touching need not be physically harmful if it is offensive—that is, if it "offends a reasonable sense of personal dignity," *id.* at 330 (citing *Restatement (Second) of Torts* § 19 (1965))—and the requisite scienter is the intent to engage in such offensive contact, and not the intent to cause physical harm from such contact. Thus, contrary to defendant's premise that

plaintiff was required to prove that he acted with the intent to cause her physical harm (by infecting her), such an intent is inapposite with respect to the "offensive contact" variant of battery.[6]

Here, as we will explain, the evidence was sufficient to permit the jury to determine that defendant intended to subject plaintiff to "offensive contact."[7] We necessarily preface that discussion with a brief description of the meaning of the term "offensive contact" under Oregon law, because that is the referent of the requisite intent.

In *Doe*, the Oregon Supreme Court explained that a variety of circumstances, including the nature of the parties' relationship, are material to determining whether a defendant has engaged in actionable "offensive contact":

> "'Familiarities not justified by the peculiar association of the parties must conform to the usages of the community and contacts not thus sanctioned may be actionable batteries. Although the state of mind of the actor may make offensive contact not otherwise so and, conversely, make inoffensive acts that, if done in anger, would be highly objectionable, nevertheless even well-intentioned acts, such as practical jokes or horseplay, may be actionable if they exceed the bounds of tolerable taste.'"

353 Or at 333 (quoting Fowler V. Harper, Fleming James, Jr., and Oscar S. Gray, 1 *Harper, James and Gray on Torts* § 3.2, 310-11 (3d ed 2006)). Consistent with those principles, the jury, in determining whether the contact was "offensive" and

---

[6] *See also Doe*, 353 Or at 330 (a defendant "is liable not only for contacts which do actual physical harm, but also for those relatively trivial ones which are merely offensive and insulting"); *accord Cook v. Kinzua Pine Mills Co.*, 207 Or 34, 48-49, 293 P2d 717 (1956) ("intent to injure" means legal injury and "[a]n offensive unpermitted touch may be a battery though no physical damage results").

[7] Because our analysis and holding are predicated on the "offensive contact" variant of battery, we imply no view here as to whether, in a civil battery claim, exposing another person to infection, without actual transmission, qualifies as a "*harmful* contact"—*viz.*, causing "physical impairment, physical pain, or illness," *Doe*, 353 Or at 330 (noting that the only issue in that case was whether, and when, the plaintiffs had been subjected to "offensive contact").

Here, although plaintiff did, indeed, contract genital herpes, the fact of her infection is not the basis for her claim. Rather, it is relevant to the extent of her damages. Even if plaintiff had escaped infection, defendant would still be liable for battery. The sexual contact—not the transmission of genital herpes—is the operative offensive touching.

whether defendant acted with the necessary appreciation of that quality, demonstrating the requisite intent, could consider the relationship between the parties, the nature of the contact, and whether the contact "conform[s] to the usages of the community." *Id.* at 333.

Here, plaintiff presented evidence of defendant's knowledge and conduct that was sufficient to support a nonspeculative inference that defendant knew that he was subjecting plaintiff to a contact that would "offend[] a reasonable sense of personal dignity." *Doe*, 353 Or at 330. In particular, the jury could reasonably infer that defendant knew that plaintiff would not consent to unprotected sexual contact if she were aware of his condition—that is, such contact would be "offensive"—and that defendant, nevertheless, intentionally subjected plaintiff to such contact. To reiterate: Defendant—a medical professional who had lived with the social and health consequences of genital herpes for 20 years—knew that plaintiff was unaware of that condition; nevertheless, even when it became clear that he and plaintiff were going to engage in sexual contact, he did not disclose his condition. Further, even after plaintiff had expressly told defendant to use a condom and defendant had said that he would do so, he unilaterally proceeded to initiate unprotected sex. Given the parties' medical training and other circumstances, the jury could reasonably infer that defendant understood that plaintiff sought protection against exposure to STIs but proceeded in intentional disregard of her directive.[8]

Given that evidence, the jury could find that defendant understood, in the totality of the circumstances, that subjecting plaintiff to sexual contact without disclosing his condition was offensive—that is, that it "offend[ed] a reasonable sense of personal dignity," *Doe*, 353 Or at 330—and that, notwithstanding that awareness, he nevertheless

---

[8] For example, defendant acknowledged that he had used condoms for the purpose of preventing the transmission of STIs in past sexual relationships.

In referring to the unprotected nature of the sexual contact here, we imply no view as to whether defendant's conduct would have constituted a battery if he had failed to inform plaintiff of his condition but used a condom. Given the totality of the circumstances of this case, we need not, and do not, reach and resolve that question.

intentionally subjected plaintiff to such contact.[9] Accordingly, the trial court correctly denied the directed verdict.

We appreciate that, until now, no Oregon appellate decision has addressed whether, or in what circumstances, engaging in sexual contact without disclosure of a known STI can give rise to liability for civil battery.[10] Nevertheless, such liability is unremarkable given that "'practical jokes or horseplay'" may be actionable "'if they exceed the bounds of tolerable taste.'" *Doe*, 353 Or at 333 (quoting Harper, 1 *Harper, James and Gray on Torts* § 3.2 at 310-11). Further, our holding comports with those of other jurisdictions that recognize that, in various circumstances, knowingly engaging in sexual contact, without disclosing a known STI, constitutes battery. Indeed, we are unaware of any authority to the contrary.

*Leleux v. U.S.*, 178 F3d 750 (5th Cir 1999), is exemplary. There, the Fifth Circuit considered whether consensual sexual intercourse can constitute a battery for the purposes of the intentional tort exception to the Federal Tort Claims Act (FTCA). The plaintiff in that case, a female naval recruit, alleged that she had contracted genital herpes as a result of consensual sexual intercourse with her superior, and sued the federal government under a theory of negligence. *Id.* at 752-53. The case was dismissed on the ground that, because the defendant had committed battery, an intentional tort, the FTCA did not provide a cause of action against the government.

In sustaining that aspect of the dismissal, the Fifth Circuit squarely addressed the issue of *prima facie* liability

---

[9] Defendant nevertheless insists that his alleged belief that his condition was noncommunicable precludes liability for battery. However, as explained above, 269 Or App at 17, the "offensive contact" variant of battery does not require that the contact result in physical harm—or, concomitantly, the intent to inflict such harm. Accordingly, defendant's subjective belief as to whether the contact could result in actual harm is immaterial.

[10] We note that a defendant may be criminally liable for sexual activity that exposes others to a risk of HIV infection. *State v. Hinkhouse*, 139 Or App 446, 912 P2d 921, *adh'd to as modified on recons*, 140 Or App 574, 915 P2d 489 (1996) (upholding multiple convictions for attempted murder and attempted assault where the defendant had been aware that he had tested positive for HIV but nonetheless repeatedly and intentionally engaged in sexual activity, consistently concealed or lied about his HIV status, and refused to wear or pretended to wear condoms).

for battery, concluding that, "if [the defendant] knew that he was infected with genital herpes when he had sexual intercourse with [the plaintiff] * * * he committed a battery." *Id.* at 756. Thus, in *Leleux*—and other cases—courts have generally determined that a defendant's intent to commit battery depends on awareness of an STI at the time the sexual contact occurred and whether the defendant, in spite of that knowledge, failed to warn a sexual partner. *Id.*; *Desnick v. American Broadcasting Companies, Inc.*, 44 F3d 1345, 1352 (7th Cir 1995) ("[T]o conceal the fact that one has a venereal disease transforms 'consensual' intercourse into battery.").

Finally, we summarily reject defendant's collateral contention that, by consenting to sex with defendant, plaintiff must be deemed to have concomitantly consented to the battery. Consent produced by material nondisclosure is no consent at all. *See, e.g., Leleux*, 178 F3d at 754-55 ("Assuming [the defendant] knew that he was infected with genital herpes," "where an individual fraudulently conceals the risk of sexually transmitting a disease, that action vitiates the partner's consent and transforms consensual sexual intercourse into battery."); *Restatement (Second) of Torts* § 892B(2) comment 1 (1979) (illustrating principle that consent is vitiated where it is based upon a "substantial mistake concerning the nature of the invasion of his interests or the extent of the harm to be expected from it and the mistake is known to the other": "A consents to sexual intercourse with B, who knows that A is ignorant of the fact that B has a venereal disease. B is subject to liability to A for battery.").[11]

Affirmed.

---

[11] *Cf. Doe*, 353 Or at 331 (in context of statute of limitations for a civil battery claim based on sexual abuse of young children, the question of "whether * * * alleged conduct was in fact offensive" should not be conflated with the question of whether a plaintiff "recognized that fact when the touching occurred").