

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-16-2004

# Matskow v. USA

Precedential or Non-Precedential: Precedential

Docket No. 03-3666

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Matskow v. USA" (2004). *2004 Decisions.* Paper 549.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/549

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF
APPEALS FOR THE THIRD CIRCUIT
_____

No. 03-3666
_____

JOHN J. MATSKO, III;
TERESA A. MATSKO,
Husband and Wife,

Appellants

v.

UNITED STATES OF AMERICA;
RUDY KOTOR

_____

APPEAL FROM THE UNITED
STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF
PENNSYLVANIA

(D.C. No. 01-cv-00076)
District Judge:  The Honorable
Joy F. Conti

_____

ARGUED MAY 11, 2004

BEFORE:  NYGAARD, McKEE, and
WEIS, Circuit Judges.

(Filed: June 16, 2004)

_____

Vincent J. Barbera, Esq. (Argued)
Barbera, Clapper, Beener, Rullo & Melvin

146 West Main Street
P.O. Box 775
Somerset, PA 15501
        Counsel for Appellant

Christine A. Sanner, Esq. (Argued)
Bonnie R. Schlueter, Esq.
Office of United States Attorney
700 Grant Street, Suite 400
Pittsburgh, PA 15219

Rudy Kotor
1397 Eisenhower Boulevard, Suite 100
Richland Square III
Johnstown, PA 15904
        Counsel for Appellees

_____

OPINION OF THE COURT
_____

NYGAARD, Circuit Judge.

John J. Matsko III[1] filed a lawsuit
sounding in tort for injuries inflicted by
Rudy Kotor, a federal employee, during a
business visit to the offices of the Mine
Safety and Health Administration
("MSHA").  Matsko's amended complaint
asserted two theories under which he
claimed the United States was liable for
his injuries.  First, he argued that Kotor's
actions can be imputed to the United

_____

[1.] Matsko's wife Teresa A. Matsko is also
a plaintiff-appellant in this case, as she
asserts a derivative claim of loss of
consortium.

States, as his employer. Second, Matsko asserted that the United States was liable because, despite a duty owed to him as a business invitee, it failed to protect him from injury by Kotor. The District Court concluded that it lacked subject matter jurisdiction because the United States enjoys sovereign immunity, and that immunity had not been waived as to either of Matsko's claims. The Court thus dismissed the suit in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(1).

Because we agree with the District Court that the Federal Tort Claims Act ("FTCA") does not waive the United States' immunity for intentional assaults by government workers who are acting outside the scope of their employment, we will affirm the dismissal of Matsko's first claim. We will reverse, however, the dismissal of Matsko's claim that the United States is liable because Kotor's supervisors and coworkers did not act to prevent the assault. If, on remand, Matsko is able to prove that Kotor's supervisors and coworkers were negligent, then his claim would be squarely within the FTCA's waiver of sovereign immunity.

I.

Matsko, the Director of Safety for PBS Coals, Inc., visited the MSHA offices for a meeting with Earl Miller, a MSHA inspector.[2] The meeting was conducted at Miller's desk, with Miller "pulling up" a chair from fellow inspector Kotor's desk for Matsko to sit in. Once the meeting was underway, Kotor returned to his desk. In a voice characterized by Matsko as "loud and menacing," Kotor told Matsko "You're in my ----ing chair." Then, before Matsko was able to give the chair back, and without provocation, Kotor slammed Matsko's face into a briefcase that was lying on Miller's desk. Matsko suffered a fractured vertebra and herniated disc in his neck.[3]

On his way out of the MSHA offices, Kotor's supervisors and coworkers gave Matsko the impression that they were not surprised by Kotor's behavior. One of the MSHA inspectors told Matkso "I told you don't piss Rudy [Kotor] off." A supervisor smirked at the comment.

In accordance with the FTCA, Matsko initially filed an administrative tort claim with the Department of Labor.[4] When that claim was denied, Matsko filed suit in federal court against Kotor and the United States, seeking $5 million in damages. Before answering Matsko's complaint, the government filed a motion under Federal Rule of Civil Procedure 12(b)(1) seeking to dismiss the complaint for lack of subject matter jurisdiction. In response to Matsko's amended complaint,

---

[2] PBS Coals, Inc. is a company regulated by the MSHA.

[3] Criminal charges against Kotor resulted in his pleading guilty to recklessly committing simple assault, harassment, and stalking.

[4] MSHA is a division of the federal Department of Labor.

which was filed shortly thereafter, the government filed another 12(b)(1) motion. The District Court granted the motion, and this appeal followed.[5]

## II.

We have jurisdiction pursuant to 28 U.S.C. § 1291 over the District Court's final order dismissing the case, and we exercise plenary review. *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).

In general, the United States enjoys sovereign immunity from lawsuits seeking money damages. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). The United States may waive sovereign immunity, however, and allow itself to be sued, if it does so unequivocally in a statute. *See Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 261 (1999). The FTCA is the statute that waives immunity, in part, for tort claims against the United States. *See* 28 U.S.C. § 2674 ( "[t]he United States shall be liable [with a few exceptions], respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances").

On appeal, Matsko attempts to demonstrate that, despite the District Court's decision to the contrary, his claims fall within the FTCA's waiver of sovereign immunity.[6] Only if the FTCA waives sovereign immunity would the

---

[5] Having dismissed the claims against the United States, the District Court refused to exercise supplemental jurisdiction over Matsko's claim against Kotor, suggesting that the claim should properly be made in state court. A tort claim against Kotor is now pending in Pennsylvania state court.

[6] In addition to the issues addressed in this opinion, Matsko's brief to this court included arguments in the "Issues Presented for Review" section related to whether the United States can be held liable for (1) failure to properly train and supervise or (2) for negligent hiring. As there is no corresponding discussion, Matsko has waived those contentions. *See In re Trans World Airlines, Inc.,* 145 F.3d 124, 132 (3d Cir. 1998) (noting that Federal Rule of Appellate Procedure 28 "is not only a technical or aesthetic provision, but also has a substantive function—that of providing the other parties and the court with some indication of which flaws in the appealed order or decision motivate the appeal") (quotation omitted); *Reynolds v. Wagner*, 128 F.3d 166, 178 (3d Cir. 1997); *Southwestern Pa. Growth Alliance v. Browner,* 121 F.3d 106, 122 (3d Cir. 1997) (opining that "appellate courts generally should not address legal issues that the parties have not developed through proper briefing"). Even if the theories were not waived, the claims would not be within the FTCA's coverage. *See* 28 U.S.C. § 2680(a); *see also Tonelli v. United States,* 60 F.3d 492, 496 (8th Cir. 1995).

District Court have jurisdiction over the claims. *See* 28 U.S.C. § 1346(b).

A.    Liability for Kotor's assault

Matsko's first argument is that the District Court erred when it held that, because of sovereign immunity, it lacked subject matter jurisdiction to hear the claim that the United States is liable for Kotor's assault. Matsko refers to various FTCA sections that he asserts waive the United States' sovereign immunity. Unfortunately for Matsko, none of these provisions encompasses situations like the one presented here. We will affirm, therefore, the District Court's dismissal of Matsko's claim that the United States is liable for Kotor's actions.

The first question resolved by the District Court was whether Kotor was within his job duties when he assaulted Matsko. The Court concluded he was not. Because the United States is only liable for negligent or wrongful acts of government employees *acting within their scope of employment*, the conclusion that Kotor was not within his job duties meant that sovereign immunity precluded the suit. *See* 28 U.S.C. § 2679(b)(1).

Our task is to decide whether Kotor's outburst was within the scope of his government employment. We assess whether Kotor was acting within the scope of his employment under the law of Pennsylvania, because that is where the incident occurred. *See* 28 U.S.C. § 1346(b)(1); *see also Aliota v. Graham*, 984 F.2d 1350, 1358 (3d Cir. 1993). In Pennsylvania, courts apply the Restatement (Second) of Agency's § 228 to determine whether conduct is within the scope of employment. Section 228 considers four prongs indicative of conduct within the scope of employment: (1) the conduct is of the kind the employee is employed to perform; (2) the conduct occurs within the time and space of employment; (3) the conduct is actuated at serving the employer; and (4) any force used is foreseeable by the employer. *Fitzgerald v. McCutcheon*, 410 A.2d 1270, 1272 (Pa. Super. Ct. 1979) (citing § 228). Unless the litigant satisfies each prong, the court will conclude that the act in question was not within the scope of employment.

First, we must articulate what "act" we are contemplating. Matsko argues that the District Court erred when it defined Kotor's assault as the "act in question." He asserts that the relevant act was Kotor's retrieval of his chair, the use of which was integral to his job as a MSHA inspector. Simply stated, Matsko characterizes the act incorrectly. We will not focus on the minimally offensive conduct—retrieval of the chair—when it was the aggregate of Kotor's actions that caused Matsko's injury. The retrieval of the chair would have been the act in question only if no assault had occurred. Plainly, an assault happened. Therefore, to determine whether Kotor was acting within the scope of his employment, the relevant "act" began when Kotor approached Matsko and ended when Kotor assaulted him, using excessive force. *See Costa v. Roxborough Mem'l Hosp.*, 708 A.2d 490, 494 (Pa.

4

Super. Ct. 1998) (defining the conduct in question to be the intentional assault).

That the § 228 test is applicable is uncontested, as is the fact that Kotor's conduct occurred within the time and space of his employment. Like the District Court, however, we are not persuaded that Matsko has satisfied, or could satisfy, the other three prongs of § 228. Defying both the first and fourth prongs, Kotor's mine inspector job description does not involve or even contemplate violence.[7] Contrary to the third prong, Kotor's act was motivated by personal animus, rather than any intent to serve the United States.[8]

Even reading the facts in the light most favorable to Matsko, as we are required to do, we cannot conclude that Kotor was acting within the scope of his employment when he assaulted Matsko. Thus, the District Court was correct that § 2679(b)(1) of the FTCA does not provide a waiver of the United States' sovereign immunity to create liability for Kotor's assault.[9]

Next, Matsko asserts that his claim fits within the FTCA's special treatment of assaults by investigative or law enforcement officers. The United States is not liable for claims involving assault, battery, or other intentional torts by federal employees, unless the government actor was an investigative or law enforcement officer. 28 U.S.C. § 2680(h).

As we are bound by our earlier precedent, we conclude that Kotor should not be treated as an "investigative or law enforcement officer" for purposes of determining whether sovereign immunity attaches. While Kotor was an inspector for the MSHA, which included authority to inspect mines and investigate possible violations, the FTCA did not intend to bring within its scope actions by "officers" not within the bounds of an investigation. *See Pooler v. United States*, 787 F.2d 868, 872 (3d Cir. 1986) (noting that Congress intended the investigative officer exception to apply only to conduct "in the course of a search, a seizure, or an arrest").

---

[7.] The cases that Matsko cites from Pennsylvania state courts to show that force is sometimes within the scope of employment are distinguishable because each involved a job description in which force was implicit. *See Orr v. William J. Burns Int'l Detective Agency*, 12 A.2d 25 (Pa. 1940) (guard); *Pilipovich v. Pittsburgh Coal Co.*, 172 A. 136 (Pa. 1934) (industrial policeman).

[8.] After assaulting Matsko and taking back the chair, Kotor commented: "I remember the last time I talked to you – you hung up on the phone on me." App. at R61.

[9.] Judge Weis would hold that Kotor's conduct was within the scope of his employment. However, recovery would be denied because the exception to the waiver of sovereign immunity for "assault and battery" under 28 U.S.C. § 2680(h) would apply.

5

Matsko suggests that under *Carlson v. Green*, 446 U.S. 14 (1980), we must read the § 2680(h) exception more broadly than in *Pooler* to encompass all activities undertaken by investigative officers. *See Wright v. United States*, 719 F.2d 1032, 1034 (9th Cir. 1983) (refusing to limit the exception to the context of a search, seizure, or arrest); *Sami v. United States*, 617 F.2d 755, 760 (D.C. Cir. 1979) (same). We need not determine whether *Pooler*'s narrow reading was mistaken, because employees of administrative agencies, no matter what investigative conduct they are involved in, do not come within the § 2680(h) exception. *See, e.g., EEOC v. First Nat'l Bank of Jackson,* 614 F.2d 1004, 1007-08 (5th Cir. 1980) (refusing to apply the exception to an Equal Employment Opportunity Commission agent). Because Kotor is not covered by the FTCA's investigative or law enforcement officer provision, the District Court was correct that no waiver of sovereign immunity applied to Kotor's intentional tort. 28 U.S.C. § 2680(h).

In sum, because Kotor was not acting within the scope of his employment during the intentional assault, nor does he qualify as an investigative or law enforcement officer, the District Court was correct that the FTCA does not apply. Thus, we affirm the dismissal for lack of subject matter jurisdiction.

B.      Liability for the negligence of Kotor's supervisors and coworkers

The District Court also dismissed Matsko's claim that the United States was negligent by not preventing his injuries. The Court stated that the FTCA did not waive sovereign immunity for such a claim and "[p]laintiffs . . . failed to cite any law or precedent to support their argument that this matter is encompassed in a statutory provision, other than the FTCA." App. at R-14. We conclude that the District Court prematurely dismissed this claim, and will reverse.

The fact that a government employee acting outside the scope of his employment committed an injurious assault or battery will not preclude liability against the government for negligently allowing the assault to occur. *Sheridan v. United States*, 487 U.S. 392, 401-02 (1988) (considering whether the intentional tort exception to waiver precluded a separate claim for liability based on the government's negligence). "In a case in which the employment status of the assailant has nothing to do with the basis for imposing liability on the Government, it would seem perverse to exonerate the Government because of the happenstance that [the assailant] was on the federal payroll." *Id.* at 402.

The alleged negligence in this claim stems from the United States' undertaking a duty to protect Matsko when it invited him to a meeting at the MSHA offices.[10]

_____

[10.]Whether the government owed a duty to Matsko must be resolved under the law of Pennsylvania, because that is where the incident occurred. *See* 28

(continued...)

As in *Sheridan*, this duty is entirely separate from any respondeat superior claim for Kotor's actions. Therefore, even if the United States cannot be held liable for Kotor's actions based on its status as his employer, 28 U.S.C. § 2680(h), it may be without sovereign immunity for negligence by other MSHA employees, who were within the scope of their own employment, in not stopping the injurious behavior. *Sheridan*, 487 U.S. at 402-03.

As discussed in the prior section, it is clear that Kotor was acting outside the scope of his employment. Taking Matsko's allegations as true, however, under § 228 the other MSHA employees were within their scope of employment at the time Matsko was attacked. Kotor's supervisors and coworkers were performing their jobs to further the MSHA's mission at the time of the assault, and were mere bystanders by virtue of the fact that the MSHA offices were an open floor plan. Because Matsko has sufficiently alleged that the MSHA employees were acting within the scope of their employment, and it is at least arguable that they were negligent,[11] the District Court erred by holding that the FTCA did not waive sovereign immunity. The question of actual negligence should be resolved on the merits, rather than in a jurisdictional challenge.[12] *See Mortensen*

---

[10.](...continued) U.S.C. § 1346(b)(1). In Pennsylvania, the Restatement (Second) of Torts § 344 makes a possessor of land liable to invitees to his property for "physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons." *Moran v. Valley Forge Drive-In Theater, Inc.*, 246 A.2d 875, 878 (Pa. 1968).

Contrary to the government's argument, Matsko's negligence claim is not a subterfuge to mask an otherwise precluded claim. Matsko's premises liability theory does not stem from negligent hiring, training, or supervision, but arises solely out of the § 344 duty.

[11.]One could question whether the United States, by and through the MSHA officers, knew that Kotor had a propensity for violence or whether the MSHA officials had time to intervene to stop Kotor. Under the uncontested facts, however, Matsko has sufficiently pleaded the existence of the duty, breach, and causation elements of his negligence claim.

[12.]The parties disagree about whether it was appropriate for the District Court to consider factual issues before the government had filed an answer. *Compare Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891-92 (3d Cir. 1977) (noting that a "12(b)(1) factual evaluation may occur at any stage in the proceedings, *from the time the answer has been served*") (emphasis added) *with Berardi v. Swanson Mem'l Lodge No. 48*, 920 F.2d 198, 200 (3d Cir. 1990). We need not resolve this issue, because on the record before us, we have no indication that facts pertinent to the

(continued...)

*v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 892 (3d Cir. 1977) ("it is incumbent upon the trial judge to demand less in the way of jurisdictional proof than would be appropriate at a trial stage"). We hold, therefore, that the District Court erred by dismissing the claim as barred by the governmental immunity and, accordingly, will reverse and remand for proceedings consistent with this opinion.

### III.

In sum, we will affirm in part and reverse in part. Insofar as Matsko claims that the United States is liable for the negligence of Kotor's supervisors and coworkers, his lawsuit should not have been dismissed. In all other respects, the District Court's order was proper.

_____

[12.](...continued) question of whether the government was negligent were contested.