**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**August 24, 2006**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 05-50707
_____

KENT BODIN,

Plaintiff - Appellant,

versus

GREGORY S VAGSHENIAN MD; ET AL,

Defendants,

UNITED STATES OF AMERICA

Defendant - Appellee.

_____

GORDON L MEYERS

Plaintiff - Appellant,

versus

UNITED STATES OF AMERICA

Defendant - Appellee.

Appeals from the United States District Court
For the Western District of Texas

Before GARZA, PRADO, and OWEN, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

In these consolidated cases, plaintiffs Kent Bodin and Gordon Meyers appeal judgments on partial findings pursuant to Federal Rule of Civil Procedure 52(c) in favor of the defendant United States on their claims under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq*.

I

Bodin and Meyers were psychiatric patients of Dr. Gregory Vagshenian at an outpatient facility in Austin operated by the Department of Veterans Affairs ("VA"). The plaintiffs alleged and presented evidence that during regularly scheduled visits, Dr. Vagshenian performed illegal, inappropriate, and unnecessary physical examinations of their genitalia.[1] They claimed that the United States was liable for Dr. Vagshenian's assault and malpractice and for failing to take steps to prevent Dr. Vagshenian's actions.

After a bench trial, the district court dismissed the complaints for lack of subject matter jurisdiction. The district court observed that the United States has waived sovereign immunity for the tortious acts or omissions of its employees only when they occur within the scope of employment. 28 U.S.C. § 1346(b)(1). Applying Texas law, the district court found that Dr. Vagshenian was not acting within the scope of his employment when he committed the assaults. The district court

_____

[1] Dr. Vagshenian was subsequently convicted of misdemeanor assault in connection with these allegations.

reasoned that assaults on third persons fell outside the scope of authority granted to Dr. Vagshenian by the United States, particularly in light of the VA's "zero-tolerance policy" against the abuse of patients. The district court also found:

> Dr. Vagshenian assaulted Bodin and Meyers for his own personal gratification, and not, in any way, for the purpose of carrying out the Clinic's treatment of patients. . . . Dr. Vagshenian's assault of Bodin and Meyers was an expression of Dr. Vagshenian's personal animosity. Thus, by assaulting Bodin and Meyers, Dr. Vagshenian turned away from treating patients, and instead he pursued his own sexual pleasure.[2]

The plaintiffs moved for a new trial or, in the alternative, to alter or amend the district court's judgment. They argued that although the district court resolved any claim against the United States based on a theory of respondeat superior, it did not dispose of their claims that other VA employees were negligent when they failed to prevent the foreseeable acts of abuse. It was undisputed that Dr. Vagshenian's coworkers were acting within the scope of their employment when they failed to prevent the assaults.

The district court denied the motion. It reasoned that, pursuant to 28 U.S.C. § 2680(h), the United States had not waived sovereign immunity for claims arising out of assault or battery. Although the plaintiffs' claims sounded in negligence, the district court reasoned that they nevertheless arose out of the assault.

In this appeal, the plaintiffs argue that the district court erred in dismissing both their claims based on Dr. Vagshenian's wrongful conduct and Dr. Vagshenian's coworkers' wrongful failure to intervene.

II

---

[2] These findings are supported by the testimony of the plaintiffs' expert witness, Dr. Gutheil, who opined that Dr. Vagshenian was not acting in furtherance of VA business, but instead out of "personal animus or personal motives or for personal pleasure" when he sexually assaulted the plaintiffs.

-3-

Rule 52(c) provides that "[i]f during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgment as a matter of law against that party." We review findings of fact made pursuant to Rule 52(c) for clear error and conclusions of law de novo. *Bursztajn v. United States*, 367 F.3d 485, 488-89 (5th Cir. 2004).

Except when waived, the United States has sovereign immunity from suit, *United States v. Sherwood*, 312 U.S. 584, 586 (1941). This immunity deprives federal courts of subject matter jurisdiction. *Chapa v. United States Dept. of Justice*, 339 F.3d 388, 389 (5th Cir. 2003). The FTCA waives that immunity for injury

> caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). By its terms, this waiver of sovereign immunity only applies when the tortfeasor acts within the scope of his employment. But even if the tortfeasor's conduct is within the scope of his government employment, the FTCA does not waive sovereign immunity for certain enumerated intentional torts, including "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights" unless the government actor was an investigative or law enforcement officer. 28 U.S.C. § 2680(h).

A

The plaintiffs argue that the district court erred in dismissing their claims against the United States based on Dr. Vagshenian's wrongful conduct. The district court did so because it found that Dr. Vagshenian was not acting within the scope of his employment when he committed the assaults. The issue of whether an employee is acting within the scope of his employment for purposes of the

FTCA is governed by the law of the state in which the wrongful act occurred. *Williams v. United States*, 350 U.S. 857 (1955); *Rodriguez v. Sarabyn*, 129 F.3d 760, 766 (5th Cir. 1997).

Under Texas law, "an employee's conduct is considered to fall within the scope of his employment if his actions were '(1) within the general authority given him; (2) in furtherance of the employer's business; and (3) for the accomplishment of the object for which the employee was employed.' " *Counts v. Guevara*, 328 F.3d 212, 214 (5th Cir. 2003) (quoting *Williams v. United States*, 71 F.3d 502, 506 (5th Cir. 1995)).[3]

Where an "intentional tort is committed in the accomplishment of a duty entrusted to the employee, rather than because of personal animosity, the employer may be liable." *GTE Southwest, Inc. v. Bruce,* 998 S.W.2d 605, 618 (Tex. 1999). "A principal is responsible for an unlawful act of his agent where the act is committed by the agent for the purpose of accomplishing the mission entrusted to him by his principal." *Southwestern Bell Tel. Co. v. Wilson*, 768 S.W.2d 755, 759 (Tex.App.))Corpus Christi 1988, writ denied) (Benavides, J.). "If the purpose of serving the master's business actuates the servant to any appreciable extent his acts are within the scope of his employment." *Howard v. Am. Paper Stock Co.*, 523 S.W.2d 744, 747 (Tex. Civ. App.))Fort Worth 1975), *reformed and aff'd*, 528 S.W.2d 576. (Tex. 1975). However, "when the servant turns aside, for however short a time, from the prosecution of the master's work to engage in an affair wholly his own, he ceases to act for the master, and the responsibility for that which he does in pursuing his own business or pleasure is upon him alone." *Tex. & P. RY. Co. v. Hagenloh,* 247 S.W.2d 236, 241 (Tex. 1952) (quoting *Galveston, H & S. A. Ry. Co. v. Currie*, 96 S.W. 1073, 1074 (Tex. 1906)). "It is not

---

[3] The United States does not contend that Dr. Vagshenian was an independent contractor and therefore not a federal employee.

ordinarily within the scope of a servant's authority to commit an assault on a third person." *Id.* at 239. The plaintiff bears the burden of proving that the employee acted for reasons other than personal animus. *Garrett v. Great W. Distrib. Co. of Amarillo*, 129 S.W.3d 797, 800 (Tex. App.))Amarillo 2004, pet. denied). This is generally a question of fact, not law. *Arbelaez v. Just Brakes Corp.*, 149 S.W.3d 717, 720 (Tex. App.))Austin 2004, no pet.); *see Houston Transit Co. v. Felder*, 208 S.W.2d 880, 882 (Tex. 1948) (holding that whether assault is within scope of employment is a factual question depending "in large measure" on the assailant's motivation in acting).

Applying these principles in a similar case, *Buck v. Blum*, 130 S.W.3d 285 (Tex. App.))Houston [14th Dist.] 2004, no pet.), the Texas Court of Appeals affirmed a summary judgment for a hospital on a claim based on a doctor's sexual assault of a patient. Buck testified that while performing a grip test, Dr. Yen placed his penis in her hand and told her to squeeze. *Id.* at 288. Buck argued that "since the procedure itself was part of the examination, and thus within the scope of Yen's authority, the use of Yen's body part was simply an inappropriate exercise of delegated authority." *Id.* at 289. The court of appeals reasoned:

> While it is undisputed Yen's alleged action was inappropriate, it cannot be fathomed that the action was in furtherance of the employer's business or for the accomplishment of an object for which he was employed. At the very moment Yen placed his body part in her hand (assuming he did), he was acting in his own prurient interest and ceased to be acting for the employer. The neurological examination at that point was only a pretense or a means for Yen's inappropriate personal gratification. Nor can it be said the assault was so connected with and immediately arising out of Yen's employment tasks as to merge the activities into one indivisible tort. A club bouncer has an inherently confrontational job that may well require physical force; whereas, neurology is not an inherently sexual profession and never requires the action allegedly perpetrated by Yen. As a matter of law, Yen's alleged conduct did not arise out of the course and scope of his employment . . . .

*Id.* at 289-90 (citations omitted).

The district court in this case did not hold as a matter of law that all sexual assaults by a psychiatrist are outside the scope of their employment. Instead, based on the testimony of the plaintiffs' expert witness, the district court found as a matter of fact that Dr. Vagshenian's sexual assaults were: 1) "not in furtherance of the VA's business"; 2) "for his own personal gratification, and not, in any way for the purpose of carrying out the Clinic's treatment of patients"; 3) "not for the accomplishment of the object for which he was hired"; and 4) "an expression of Dr. Vagshenian's personal animosity." Under Texas law, a finding that Dr. Vagshenian's conduct was solely motivated by his own personal gratification and not even in part by the Clinic's purpose forecloses the conclusion that he was acting within the scope of his employment.[4]

The plaintiffs contend that the district court was compelled to conclude to the contrary because the assaults occurred at the VA office during scheduled appointments while Dr. Vagshenian was purportedly providing treatment. They cite no evidence that Dr. Vagshenian considered his

---

[4] *See Green v. Ransor, Inc.*, 175 S.W.3d 513 (Tex. App.) ) Fort Worth 2005, no pet.) (employer not liable under a theory of respondeat superior for employee's negligent drunken driving where the employee's drinking violated company policy and was solely for his own interest); *Arbelaez v. Just Brakes Corp.*, 149 S.W.3d 717, 720 n.4, 722 (Tex.App.) ) Austin 2004, no pet.) (applying requirement of RESTATEMENT (SECOND) AGENCY § 235 that court look to negligent employee's state of mind in determining whether conduct was actuated by intent to serve employer); *G.T. Mgmt., Inc. v. Gonzalez*, 106 S.W.3d 880, 884 (Tex.App.) ) Dallas 2003, no pet.) (vicarious liability for intentional tort appropriate "when the act, although not specifically authorized by the employer, is closely connected with the employee's authorized duties, that is, if the intentional tort is committed in the accomplishment of a duty entrusted to the employee, rather than because of personal animosity"); *Ralph v. Mr. Paul's Shoes, Inc.*, 572 S.W.2d 812, 816 (Tex. Civ. App.) ) Corpus Christi 1978, writ ref'd n.r.e.) ("Only if the servant steps aside from the master's business for some purpose wholly disconnected with his employment will the relation of master and servant be suspended."); RESTATEMENT (SECOND) AGENCY § 228(a)(c) (requiring that tort be actuated "at least in part, by a purpose to serve the master"); RESTATEMENT (SECOND) AGENCY § 235 cmt. a ("It is the state of the servant's mind which is material. Its external manifestations are important only as evidence. Conduct is within the scope of employment only if the servant is actuated to some extent by an intent to serve his master.).

sexual advances to be a legitimate form of treatment. They rely instead on the cases of several other jurisdictions, beginning with *Benavidez v. United States*, 177 F.3d 927 (10th Cir. 1999).

Benavidez alleged that Dr. Bullis, his government-employed psychologist, "used therapy sessions to convince [him] that he was a homosexual and that he should have sex with Bullis." *Id.* at 928. The Tenth Circuit held that Benavidez's claim was not barred by the assault and battery exception to the FTCA's waiver of sovereign immunity. *Id.* at 932. The court assumed without deciding, however, "that Bullis acted within the course and scope of his employment as a government psychologist." *Id.* at 928 n.2. *Benavidez* is therefore, not contrary to the district court's conclusion that Dr. Vagshenian acted outside the scope of his employment.

The plaintiffs next rely on the Ninth Circuit's decision in *Simmons v. United States*, 805 F.2d 1363 (9th Cir. 1986), which, applying Washington law, deferred to the trial court's finding that a psychiatrist's sexual involvement with his client was in the scope of his employment. *Id.* at 1371. *Simmons* has subsequently been criticized as a misapplication of Washington state law. *Thompson v. Everett Clinic*, 860 P.2d 1054, 1058 (Wash. App. 1993). In *Thompson*, a patient of a doctor who had sexually abused him during a medical exam sued the medical clinic for which the doctor worked under a theory of respondeat superior. The trial court granted summary judgment for the defendant, and the court of appeals affirmed. *Thompson* rejected *Simmons* and held that the better view of Washington law is that an employer will not be held liable as a matter of law merely because "the employment situation provided the opportunity for the servant's wrongful acts or the means to carry them out." *Id.* (emphasis omitted) (quoting *Kuehn v. White*, 600 P.2d 679, 682 (Wash. App. 1979); *see also LaValley v. Ritchie*, 42251-1-I, 1999 WL 359098, at \*2 (Wash. App. May 24, 1999) (unpublished) (noting that the court had expressly rejected *Simmons*). Like the district court in this

case, the *Thompson* court observed that "[t]he assault emanated from [the doctor's] wholly personal motives for sexual gratification. There is no reason the assaultive act can be considered to have been done in furtherance of the Clinic's business, or cloaked with some apparent authority." *Thompson*, 860 P.2d at 1058. *Simmons* is therefore not a persuasive reading of either Texas or Washington state law.[5]

*Andrews v. United States*, 732 F.2d 366 (4th Cir. 1984), bolsters this conclusion. In *Andrews*, the district court found that the plaintiff's counselor persuaded her that the best course of treatment for her depression was to have an affair with him, *id.* at 368, and that the counselor was acting within the scope of his employment under South Carolina law, *id.* at 370. The Fourth Circuit reversed, holding that it was "clear" that the counselor was acting solely in his own interest when he seduced the plaintiff. *Id.*

The plaintiffs have, therefore, not demonstrated that the district court's finding that Dr. Vagshenian's tortious conduct was not motivated to an appreciable extent by the VA's purposes was clearly erroneous or that the court misapplied Texas law.

B

---

[5] The remaining cases the plaintiffs cite in a footnote are similarly unpersuasive. *Doe v. Samaritan Counseling Center,* 791 P.2d 344, 347 (Alaska 1990), *Ray v. Value Behavioral Health, Inc.*, 967 F.Supp. 417 (D.Nev. 1997), and *Marston v. Minneapolis Clinic of Psychiatry and Neurology*, 329 N.W.2d 306, 311 (Minn. 1982), each declined to apply the Restatement's requirement that respondeat superior liability not be imposed unless the employee's conduct was motivated in part by a desire to serve the employer. Texas law still follows the requirement of RESTATEMENT (SECOND) OF AGENCY §§ 228 and 235 that the employer's business must actuate the servant to some appreciable extent before vicarious liability is imposed and that the employee's motivation is determinative. *See supra* note 4. Finally, *St. Paul Fire & Marine Insurance Co. v. Asbury*, 720 P.2d 540 (Ariz. App. 1986), concerned the interpretation of the phrase "professional services" as used in an insurance contract. *Id.* at 566. The case did not address the concept of vicarious liability.

The plaintiffs next challenge the district court's dismissal of their negligence claims based on the United States' failure to protect them from Dr. Vagshenian's assaults. In support of these claims, the plaintiffs presented evidence that VA officials had received prior complaints that Dr. Vagshenian had sexually abused patients. They nevertheless permitted Dr. Vagshenian to continue his work. There is no dispute that Dr. Vagshenian's coworkers were acting within the scope of their employment when they failed to intervene.

The plaintiffs argue that the district court erred in holding that their claims that Dr. Vagshenian's coworkers were negligent in not detecting and preventing the sexual assaults fell within the exception to the FTCA's waiver of sovereign immunity for "[a]ny claim arising out of assault [or] battery." 28 U.S.C. § 2680(h). The district court concluded that the plaintiffs' negligence claims against the United States arose out of Dr. Vagshenian's assault and were therefore barred.

In *Block v. Neal*, 460 U.S. 289 (1983), the Supreme Court considered what it means for a claim to arise out of a misrepresentation))a tort listed in § 2680(h). Neal sued the Farmers Home Administration, a division of the Department of Agriculture, for its failure to properly perform its voluntarily undertaken duty to supervise construction of her house. The United States argued that Neal's claims arose out of a misrepresentation))i.e., the negligent failure to disclose defects in the construction))and were barred by § 2680(h). The Supreme Court disagreed. It held that the "misrepresentation exception" did "not bar negligence actions which focus not on the FHA's failure to use due care in communicating information, but rather on the Government's breach of a different duty." *Id*. at 297.

In *United States v. Shearer*, 473 U.S. 52 (1985), the Supreme Court considered whether a claim of negligent supervision that stemmed from a federal employee's assault was barred by §

2680(h). Shearer had been kidnaped and murdered by an Army private. *Id.* at 53. The administratrix of his estate alleged that the United States was liable for negligently failing to exercise a reasonable degree of control over the private and failing to warn others of his criminal past. *Id.* at 54. A plurality of the court read § 2680(h) broadly enough to bar claims "that sound in negligence but stem from a battery committed by a Government employee." *Id.* at 55. The plurality observed that the § 2680(h) exception "does not merely bar claims *for* assault or battery; in sweeping language it excludes any claim *arising out of* assault or battery." *Id.* at 55 (emphasis in original). Accordingly, the plurality concluded that the FTCA does not waive sovereign immunity for negligent supervision claims. *Id.*

The plaintiffs primarily rely on the Supreme Court's decision three years later in *Sheridan v. United States*, 487 U.S. 392 (1988). In *Sheridan*, the Court clarified that the intentional tort exception does not bar all negligence claims that are related to an assault or battery committed by a government employee. Sheridan alleged that the United States negligently failed to prevent Carr, an intoxicated off-duty serviceman, from shooting him. *Id*. at 393-94. Just prior to the assault, several naval corpsman had attempted but failed to take Carr, who they had found in an obviously intoxicated state brandishing a rifle, to an emergency room. *Id.* at 395. The Court distinguished *Shearer* on the ground that Shearer solely pled a claim of negligent hiring and supervision. *Id.* at 397. The United States' liability in that case would only arise because of the employment relationship with the intentional tortfeasor. *Id.* In Sheridan's case, on the other hand, by adopting regulations prohibiting the possession of firearms on the naval base and "voluntarily undertaking to provide care" to Carr, the United States had assumed the responsibility of performing its voluntarily undertaken Good Samaritan duties with reasonable care. *Id.* at 401. This basis for liability, the Court stated, was

"entirely independent of Carr's employment status." *Id.* The Court concluded that "the mere fact that Carr happened to be an off-duty federal employee should not provide a basis for protecting the Government from liability that would attach if Carr had been an unemployed civilian patient or visitor . . . ." *Sheridan*, 487 U.S. at 402.

This court has since stated that "*Sheridan* stands for the principle that negligence claims related to a Government employee's § 2680(h) intentional tort may proceed where the negligence arises out of an independent, antecedent duty unrelated to the employment relationship between the tortfeasor and the United States." *Leleux v. United States*, 178 F.3d 750, 757 (5th Cir. 1999). The actual assault "thus serves only to establish the extent of the plaintiff's injury, not to establish the . . . breach of duty." *Thigpen v. United States*, 800 F.2d 393, 399 n.10 (4th Cir. 1986) (Murnaghan, J., concurring in result). In other words, the plaintiffs can recover only if the United States breached a duty independent of its employment relationship with Dr. Vagshenian.

The plaintiffs contend that the United States has an antecedent duty to protect patients in VA hospitals from reasonably known dangers. Whether the United States owed an independent duty to the plaintiffs is a question of Texas state law. *See* 28 U.S.C. § 1346(b)(1) (rendering United States liable "in accordance with the law of the place where the act or omission occurred). Under Texas law, a hospital has a duty to exercise care to safeguard patients from known and reasonably known dangers. *Harris v. Harris County Hosp. Dist.*, 557 S.W.2d 353, 355 (Tex. Civ. App.) ) Houston [1st Dist.] 1977, no writ). This duty extends to taking reasonable steps to prevent assaults by third persons, *see Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842 (Tex. 2005) (discussing malpractice claims based on assaults between patients), and medical staff, *see Buck*, 130 S.W.3d 285

-12-

(discussing claim of assault by neurologist).[6] A provider of psychological services has a heightened duty of care to its patients because of their vulnerability and the resulting special relationship. *See Porter v. Nemir*, 900 S.W.2d 376 (Tex. App.)) Austin 1995, no pet.). Similarly, a possessor of land owes a duty to invitees to protect them from foreseeable assaults on the premises, *Lefmark Mgmt. Co. v. Old*, 946 S.W.2d 52, 53 (Tex. 1997); *Charrin v. Methodist Hosp.*, 432 S.W.2d 572, 574-75 (Tex. Civ. App.)) Houston [1st Dist.] 1968, no writ) (hospital patient akin to business invitee for purposes of premises liability). These theories of liability do not depend on the employment status of the assailant. The United States could be held liable whether the plaintiffs were sexually assaulted by its employee or a third-party tortfeasor.[7]

Other courts are in agreement with this reasoning. In *Bembenista v. United States*, 866 F.2d 493 (D.C. Cir. 1989), the plaintiff alleged that she was sexually assaulted by a medical technician while a patient at an Army medical center. *Id.* at 495. The District of Columbia Circuit reversed the

---

[6] The United States contends that this duty does not extend to adult males who are in "full control of their faculties." We find no support for this proposition. The capabilities of the patient may bear on the precautions reasonably necessary to protect him, but not the existence of the duty. *See Harris*, 557 S.W.2d at 355 ("In determining whether the hospital exercised reasonable care in the instant case, it was appropriate for the jury to consider . . . the peculiar mental traits of the patient.").

[7] We pause to note what this case does not concern. Because the plaintiffs have identified a duty independent of the United States' employment relationship with Dr. Vagshenian, this is not a case where the plaintiff seeks to recover from the United States merely because the assailant happens to be on the federal payroll. *Cf. Leleux*, 178 F.3d at 758 (claim that United States negligently supervised federal employee is barred, absent any allegations of an independent, antecedent duty unrelated to the employment relationship). For the same reason, we need not express an opinion as to whether a claim of negligent supervision would be barred by § 2680(h). Nor does this case involve the application of Texas Occupational Code § 160.010(b), which provides for immunity for non-malicious acts taken in the course of medical peer review. The United States has neither pled nor briefed that affirmative defense. *See Dallas County Med. Soc'y v. Ubinas Brache*, 68 S.W.3d 31, 38 (Tex.App.)) Dallas 2001, pet denied) (§ 160.010 immunity is a defense that ordinarily must be pled); *see Keszler v. Mem'l Med. Cent. of E. Tex.*, 105 S.W.3d 122, 128 (Tex. App.)) Corpus Christi 2003, no pet.) (characterizing § 160.010 as an affirmative defense).

district court's dismissal of her claim based on a breach of a special duty of protective care owed to hospital patients. The court reasoned that the hospital owed a duty to its patients to protect them from sexual abuse by employees and third parties alike. *Id*. at 498. This duty arose out of the special relationship between the plaintiff and the hospital, not the hospital and its employee. *Id.* at 498. The duty that the United States allegedly breached, therefore, was not one that stemmed from the employment relationship with the assailant.

Similarly, in *Gess v. United States*, 952 F.Supp. 1529 (M.D. Ala. 1996), the plaintiffs presented evidence that a medical technician at an Air Force hospital had poisoned new born babies. *Id*. at 1532. The plaintiffs claimed that the hospital breached the duty of care it owed to the plaintiffs in assigning the poisoner to the nursery; failing to adhere to regulations on quality assurance, documentation, and supervision; and failing to identify the cause of the plaintiffs' injuries and prevent recurrence. *Id.* at 1550. The court reasoned that § 2680(h) did not bar this claim because under Alabama law, the hospital owed an independent duty to exercise reasonable care to protect its patients from foreseeable criminal acts of third parties. *Id.* at 1551.[8]

Finally, in *Matsko v. United States*, 372 F.3d 556 (3d Cir. 2004), the plaintiff was invited to a meeting at a Federal Mine Safety and Health Administration office where he was assaulted by a federal employee while other federal employees looked on. *Id*. at 557. The plaintiff sued, alleging

---

[8]*See also Thigpen*, 800 F.2d at 399 (Murnaghan, J., concurring) (court has jurisdiction over claim based on hospital's breach of duty to protect patients from assaults by third parties). *But see Acosta v. United States*, 207 F.Supp.2d 1365, 1369 (S.D.Fla. 2001) (barring premises liability claim and stating, "*Sheridan* does not apply, however, where an allegedly foreseeable battery was only foreseeable to the Defendant because it happened to be the assailant's employer."); *Bajkowski v. United States*, 787 F.Supp. 539, 541-42 (E.D.N.C. 1991) (barring negligent hiring claim where United States' breach of duty is due to knowledge of assailant's propensity for violence gained only through employment relationship).

that his assailant's supervisors and coworkers undertook a duty to protect him as a business invitee. *Id.* at 560-61. The district court dismissed the claim, but the Third Circuit reversed, citing *Sheridan* for the proposition that "[t]he fact that a government employee acting outside scope of his employment committed an injurious assault or battery will not preclude liability against the government for negligently allowing the assault to occur." *Id.* at 560. The duty to protect business invitees was "entirely separate from any respondeat superior claim for [the assailant's] actions." *Id.* at 561.[9]

We therefore hold that the district court erred in dismissing for lack of jurisdiction the plaintiffs' claims based on Dr. Vagshenian's coworkers' independent acts of negligence in failing to prevent the sexual assaults.

III

For the foregoing reasons, we AFFIRM the judgment of the district court in part, REVERSE in part, and REMAND for proceedings consistent with this opinion.

---

[9] *See also Strange v. United States*, 114 F.3d 1189 (6th Cir. 1997) (table decision) (holding that court had jurisdiction over claim of premises liability stemming from postmaster's sexual assault on postal customers on postal property); *Sandoval v. United States*, 980 F.2d 1057, 1059 (5th Cir. 1993) (district court erred in dismissing as frivolous claim that the United States negligently incarcerated the plaintiff resulting in his assault by fellow inmate); *Hallett v. United States Dept. of Navy*, 850 F.Supp. 874 (D.Nev. 1994) (holding that court had jurisdiction over claim of premises liability stemming from assault by Naval officers at Tailhook Convention). *But see Pottle v. United States*, 918 F.Supp. 843, 850 (D.N.J. 1996) (declining to permit a claim of premises liability reasoning, "Every day, across the country, thousands of federal employees interact with millions of citizens on government premises . . . . If the Court held that the government was subject to suit in such cases, it would overstep the bounds of the sovereign immunity waiver . . . .").

PRISCILLA R. OWEN, Circuit Judge, concurring:

I fully concur in Parts I and IIA of the court's opinion, and I concur in the judgment remanding this case for further proceedings. However, the United States Supreme Court expressly left open a difficult issue in *Sheridan v. United States*, which is "whether negligent hiring, negligent supervision, or negligent training may ever provide the basis for liability under the [Federal Tort Claims Act] for a foreseeable assault or battery by a Government employee."[1] In today's decision, the majority asserts in Part IIB that it is "not express[ing] an opinion as to whether a claim of negligent supervision would be barred,"[2] but the undeniable effect of its holding is that such claims are not barred in this case. I nevertheless concur in the judgment because this circuit's pre-existing precedent leads to the conclusion that a broader duty of care owed to an injured party could be breached by negligently supervising an employee, and the government may be liable for such a breach.[3]

**I**

The parties had the opportunity to develop fully the record in this case during a bench trial at which sixteen witnesses testified. The plaintiffs presented evidence that employees of the Cen-Tex VA hospital failed to investigate timely or adequately complaints that Dr.

---

[1]487 U.S. 392, 403 n.8 (1988).

[2]*Ante*, at 13 n.7.

[3]*See Leleux v. United States*, 178 F.3d 750, 757 (5th Cir. 1999) (concluding that "*Sheridan* stands for the principle that negligence claims related to a Government employee's [28 U.S.C.] § 2680(h) intentional tort may proceed where the negligence arises out of an independent, antecedent duty unrelated to the employment relationship between the tortfeasor and the United States").

Vagshenian had engaged in inappropriate contact with patients. The plaintiffs relied on a report by the VA's Clinical Review team that concluded, "If the proper follow-up and investigation had been done in February 2000, it is likely that Dr. Vagshenian's behavior would have been discovered then." Dr. Vagshenian sexually abused the plaintiffs in 2001. An expert witness additionally testified that the VA's failure to investigate in accordance with its patient abuse policy violated the standard of care owed to outpatients such as the plaintiffs.

At the close of the evidence, the government moved for dismissal of all claims against all defendants under Rule 52(c),[4] and the district court granted that motion, concluding that none of the claims were cognizable under the Federal Tort Claims Act and therefore that subject matter jurisdiction was lacking. With regard to the claims asserted against the government, the district court held in each plaintiff's case that "by framing his claim in terms of the VA's negligent failure to prevent an assault, Plaintiff's claim is nothing more than a claim for negligent supervision" that "is related to the VA's employment relationship with Dr. Vagshenian." The district court reasoned that the plaintiffs had failed to "identify any independent, antecedent duty unrelated to the VA's employment relationship with Dr. Vagshenian."

## II

The Federal Tort Claims Act grants "exclusive jurisdiction of [certain] civil actions

---

[4]FED. R. CIV. P. 52(c).

-17-

on claims against the United States, for money damages" and has been construed as a waiver

of immunity from suit

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.[5]

Section 2680(h) provides that the foregoing waiver "shall not apply to . . . any claim arising

out of assault [or] battery," subject to a provision for law enforcement officials not relevant

here.[6]  The question with which courts have struggled is the extent to which this exception

applies when the person who commits an assault or battery is the employee of the

government.  The decisions are nuanced and often conflicting.

Our most recent guidance from the Supreme Court is *Sheridan*.[7]  Although leaving

open "whether negligent hiring, negligent supervision, or negligent training may ever provide

the basis for liability under the FTCA for a foreseeable assault or battery by a Government

employee,"[8] the Court cited with approval[9] a decision from the Seventh Circuit, *Doe v.*

---

[5]28 U.S.C. § 1346(b).

[6]*Id*. § 2680(h).

[7]487 U.S. 392.

[8]*Id*. at 403 n.8.

[9]*Id*. at 402 n.7.

-18-

*United States*.[10]  In *Doe* children committed to the care of an Air Force base day care center were sexually molested, and it was not known whether the perpetrator was a government employee or whether the molestations occurred on or off the government's premises.  The fact that the assault may have been committed by an employee was not an obstacle to imposing liability on the government.  The Supreme Court said that "[t]he Government's responsibility for an assault may be clear even though the identity of the assailant is unknown," and that the Seventh Circuit "was certainly correct in holding that it would be irrational to bar recovery if the assailant happened to be a Government employee, while permitting relief if he was not."[11]

In *Doe*, the Seventh Circuit drew what it termed a "clear and firm" line to serve what it perceived to be "the dual congressional purposes of allowing legitimate independent negligence claims while foreclosing disguised *respondeat superior* claims."[12]  Citing the plurality opinion in *Shearer*,[13] the Seventh Circuit reasoned that the legislative history of the exception for assault and battery "points toward the notion that Congress used the broader

---

[10]838 F.2d 220 (7th Cir. 1988).

[11]*Sheridan*, 487 U.S. at 402 n.7.

[12]838 F.2d at 224.

[13]*United States v. Shearer*, 473 U.S. 52, 55 (1985) ("There is no indication that Congress distinguished between 'negligent supervision' claims and *respondeat superior* claims, with only the latter excluded under the Act."; "No one suggested that liability would attach if the Government negligently failed to supervise such an assailant."); *see also id*. at 56 ("Once again, [in amending § 2680(h) to waive sovereign immunity for claims arising out of the intentional torts of law enforcement officials,] Congress did not hint that it thought the Government's liability for an assault and battery turned on the adequacy of supervision or warnings.").

section 2680(h) language so that plaintiffs could not disguise *respondeat superior* claims as 'negligent supervision' claims, sneaking them in through the courthouse back door."[14] The line *Doe* drew was: "Where the government affirmatively assumes a duty to the victim prior to the assault, and the government breaches that duty causing injury to the victim, we cannot say that her claim arises out of the assault."[15] The duty that the court said was owed in that case was the duty to "watch and protect" the victims,[16] and the government's breach was "failure to supervise the children in its care."[17]

This circuit had occasion to consider *Sheridan* in *Leleux v. United States*, in which the court was presented with allegations that the government failed to protect a government employee from an alleged battery by her supervisor.[18] Leleux was a Navy recruit who submitted to sexual intercourse with a Navy officer after he fraternized with her a number of times off the naval base (in violation of Navy regulations) and plied her with alcohol (in violation of state alcoholic beverage laws due to her age). The naval officer allegedly transmitted genital herpes to Leleux during these encounters. This court opined that Leleux's

---

[14]*Doe*, 838 F.2d at 223.

[15]*Id.*

[16]*Id.*

[17]*Id.* at 224.

[18]178 F.3d 750 (5th Cir. 1999).

"negligent training and supervision claim[s]" are "likely preclude[d],"[19] citing *Sheridan*,[20] the Supreme Court's earlier, plurality decision in *United States v. Shearer*,[21] and this court's decision in *Garcia v. United States*.[22] The court then proceeded to analyze Leleux's claims, holding they "patently fail[ed]" under *Sheridan* because they were "related to the employment relationship between the United States [and the offending Naval officer]."[23] The claims this court expressly rejected included "negligent failure to protect Leleux from [the officer's] misuse of his position" and "negligent training and supervision."[24] The court observed, "Leleux does not allege that the Government had any duty to protect her independent of its employment relationship with [the officer]; Leleux references no regulation or duty assumed by the Navy that concerns the Navy's responsibility for the welfare of third parties."[25] This court ultimately concluded that "*Sheridan* stands for the principle that negligence claims related to a Government employee's § 2680(h) intentional tort may proceed where the negligence arises out of an independent, antecedent duty

---

[19]*Id.* at 756 n.5.

[20]487 U.S. at 403 n.8.

[21]473 U.S. 52, 55 (1985).

[22]776 F.3d 116, 117-18 (5th Cir. 1985).

[23]*Leleux*, 178 F.3d at 757.

[24]*Id.*

[25]*Id*. at 758.

-21-

unrelated to the employment relationship between the tortfeasor and the United States."[26]

There is tension between the conclusion that "negligent training and supervision claim[s]" are "likely preclude[d]" and the recognition of a cause of action against the government if there is "an independent, antecedent duty unrelated to the employment relationship between the tortfeasor and the United States."[27] In the case before us today, the allegations of negligence on the part of government employees boil down to their failure to supervise Dr. Vagshenian. The fact that under Texas law, there may be an antecedent, independent duty to protect patients from employees and third parties alike does not change the analysis that the government's liability, if any, largely hinges on its failure to supervise its employee. The only assertion the plaintiffs have made against the government that arguably does not constitute a negligent supervision claim is their contention that another staff member should have been present during all physical examinations of patients. That claim is similar to the fact pattern in *Doe*, in which the sexual assaults of the children could have been prevented had the children been attended at all times. However, it is doubtful that in the case before us, requiring the presence of another during examinations would have prevented the plaintiffs' abuse. The government's overarching failure was the failure to recognize and address Dr. Vagshenian propensities as a sexual predator.

In today's decision, the majority says that it "need not express an opinion as to

---

[26]*Id*. at 757.

[27]*Id.* at 756 n.5, 757.

whether a claim of negligent supervision would be barred by § 2680(h)."[28] But the duty the court recognizes appears to permit liability to be based on just such a claim, and under the facts of this case, liability can be pinned on little else. If there is some means by which the government breached its duty of care to patients such as the plaintiffs other than negligent supervision or retention of Dr. Vagshenian, the majority should identify what it is.

The District of Columbia Circuit's decision in *Bembenista v. United States*,[29] on which the majority relies, is instructive in this regard. A clinically blind patient was sexually assaulted by a medical technician who was employed by the government.[30] The District of Columbia Circuit held that the plaintiff had stated a claim when she alleged that other employees of the medical facility had over-medicated her with insulin, rendering her unconscious or semi-comatose and unable to protect herself, and that she could prevail by proving this breach proximately caused her assaults.[31] That court expressly declined to decide whether the government could be liable on the basis that it allegedly retained and supervised an employee known to be psychologically disturbed.[32]

The majority attempts to avoid, unsuccessfully I submit, crossing this bridge.

---

[28]*Ante*, at 13 n.7.

[29]866 F.2d 493 (D.C. Cir. 1989).

[30]*Id.* at 495.

[31]*Id.* at 498.

[32]*Id.* ("We need not reach the more troublesome question whether the government would be liable for the mere negligent retention and supervision of a medical technician known to be psychologically disturbed.").

-23-

Nevertheless, in the final analysis, the court seems to have done so already in *Leleux v. United States*.[33]  *Leleux*'s prediction that negligent supervision claims are precluded must give way to the holding it enunciated.  Under this circuit's precedent, the inquiry is whether the government, in operating the Cen-Tex VA facility, owed its outpatients "an independent, antecedent duty *unrelated to the employment relationship between the tortfeasor and the United States*."[34]   That formulation does not seem to recognize an exception for circumstances in which such a duty is breached by the government's failure to supervise an employee.

We look to state law to determine what duties exist.  The plaintiffs were outpatients and invitees on the premises of the hospital.  The leading case in Texas regarding the duty to protect invitees from foreseeable assaults by third parties, generally, is *Timberwalk Apartments, Partners, Inc. v. Cain*.[35]  However, when a claim is asserted that a health care facility failed to protect a patient from an assault, the duty can be more particularized than the general duty to protect from foreseeable assaults by third parties.  For purposes of determining whether the Texas Medical Liability Insurance Improvement Act[36] applies, the Supreme Court of Texas has held that there is a "distinction between health care liability

---

[33]178 F.3d 750 (5th Cir. 1999).

[34]*Id*. at 757 (emphasis added).

[35]972 S.W.2d 749 (Tex. 1998).

[36]That legislation is now codified, in part, at TEX. CIV. PRAC. & REM. CODE §§ 74.001, et seq. and TEX. OCC. CODE §§ 160.001, et seq.

claims," and that "[t]he obligation of a health care facility to its patients is not the same as the general duty a premises owner owes to invitees."[37] In a case in which a nursing home resident was sexually assaulted by another patient, that court held that "judgments concerning health and medical care, including protection of patients, are made by health care professionals as part of the care and treatment of the patients admitted to their facilities,"[38] and that the supervision of the patient who was assaulted and the patient who assaulted her "are inseparable from the accepted standards of safety applicable to the nursing home."[39]

In determining whether Texas law imposes a duty unrelated to the government's employment of Dr. Vagshenian, the fact that he is a physician and that the plaintiffs claim the government failed to engage in an adequate review of Dr. Vagshenian and his contacts with patients is also pertinent to the inquiry. In Texas, as a general proposition, physicians are not employees of hospitals or similar facilities because the corporate practice of medicine is prohibited, with limited exceptions.[40] Physicians attend patients as independent contractors or obtain privileges to practice at a hospital or medical facility. It is an open question under Texas law whether a hospital or similar facility owes a common-law duty to

---

[37]*Diversicare Gen. Partners, Inc. v. Rubio*, 185 S.W.3d 842, 850 (Tex. 2005).

[38]*Id.* at 853.

[39]*Id.* at 855.

[40]*See* TEX. OCC. CODE §§ 151.002(a)(11), (13); 155.001; 164.052(a)(17); *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 539-40 (Tex. 2002); *Gupta v. E.Idaho Tumor Inst., Inc.*, 140 S.W.3d 747, 752 (Tex. App. – Houston [14th Dist.] 2004, pet. denied); *Flynn Bros. v. First Med. Assocs.*, 715 S.W.2d 782, 785 (Tex. App. – Dallas 1986, writ ref'd n.r.e.).

patients in credentialing and in the peer review of such physicians.[41]  The Supreme Court of

Texas has recognized that the lower Texas courts have split on this issue,[42] but has thus far

left the question unresolved.[43]  The Supreme Court of Texas has recognized, however, that

"credentialing is an ongoing and continuous process . . . includ[ing] not only a hospital's

initial decision to grant staff privileges, but also formal reevaluations, and continual

monitoring and assessment of physician competence," and that "negligent credentialing

claims are health care liability claims under the [Medical Liability Insurance Improvement

Act] because they involve claimed departures from accepted standards of health care."[44]  To

the extent that a health care entity[45] credentials physicians and exercises medical peer

review,[46] section 160.101 of the Texas Occupation Code applies,[47] and it "prescribe[s] a

---

[41]*St. Luke's Episcopal Hosp. v. Agbor*, 952 S.W.2d 503, 508 (Tex. 1997) ("We have never dealt with the question of whether a common-law cause of action exists for negligent credentialing.").

[42]*Id*. (citing *Park North Gen. Hosp. v. Hickman*, 703 S.W.2d 262, 264-66 (Tex. App. – San Antonio 1985, writ ref'd n.r.e.) (upholding a cause of action for negligent credentialing and determining that a hospital has a duty to a patient to exercise reasonable care in the selection of its medical staff); *Jeffcoat v. Phillips*, 534 S.W.2d 168, 172-74 (Tex. Civ. App. – Houston [14th Dist.] 1976, writ ref'd n.r.e.) (holding that absent an employer-employee, principal-agent, partnership, or joint venture relationship between a hospital and physician, a hospital is not liable for its credentialing decisions where the patient chooses the physician)).

[43]*Id*. ("[W]e reserve for another day whether we recognize a common-law cause of action for negligent credentialing.").

[44]*Garland Cmty. Hosp. v. Rose*, 156 S.W.3d 541, 544 (Tex. 2004).

[45]*See* TEX. OCC. CODE § 151.002(a)(5) (defining "Health care entity").

[46]*See id*. § 151.002(7) (defining "Medical peer review").

[47]Section 160.010 provides in pertinent part:

threshold standard of malice to state a cause of action against a hospital for its credentialing activities."[48]

The evidence reflects that the employees of the government did undertake to evaluate and investigate Dr. Vagshenian, including some of his questionable practices with patients, before the sexual abuse of the plaintiffs in this case occurred. Texas law establishes a standard of care in exercising medical peer review of physicians who are not employees. Accordingly, Texas law imposes an "antecedent duty unrelated to the employment relationship between the tortfeasor and the United States," as required by this court's precedent in *Leleux*. However, neither the plaintiffs nor the government has pled or cited section 160.010 of the Texas Occupation Code. To the extent the plaintiffs were required

---

(a) The following are immune from civil liability:
   (1) a person who, in good faith, reports or furnishes information to a medical peer review committee or the board;
   (2) a member, employee, or agent of the board, a medical peer review committee, or a medical organization committee, or a medical organization district or local intervenor, who takes an action or makes a recommendation within the scope of the functions of the board, committee, or intervenor program, if that member, employee, agent, or intervenor acts without malice and in the reasonable belief that the action or recommendation is warranted by the facts known to that person; and
   (3) a member or employee of the board or any person who assists the board in carrying out its duties or functions provided by law.
(b) A cause of action does not accrue against a member, agent, or employee of a medical peer review committee or against a health care entity from any act, statement, determination or recommendation made, or act reported, without malice, in the course of medical peer review.

*Id*. § 160.010(a), (b).

[48]*St. Lukes Episcopal Hosp.*, 952 S.W.2d at 509.

-27-

to plead and prove malice to "state a cause of action against a hospital,"[49] they have failed to do so. To the extent the government might have been required to plead immunity,[50] it did not do so, nor did it establish such immunity as a matter of law.[51] On remand, the district court will have the task of determining the precise contours of the duty the government owed to the plaintiffs and determining whether there was a breach based on the facts before it and the procedural posture of this case.

---

[49]*Id.*; *see also Dallas County Med. Soc'y v. Ubiñas-Brache*, 68 S.W.3d 31, 40 (Tex. App. – Dallas 2001, pet. denied) (holding that under former TEX. REV. CIV. STAT. ANN. art. 4495b, § 5.06(l), now codified in TEX. OCC. CODE § 160.010(b), the plaintiff "had the burden to prove malice to meet the threshold to establish a cause of action for, or to impose, civil liability," that "[t]o impose liability under the Act required an affirmative finding on the issue of malice," and that judgment must be rendered for the defendant because the plaintiff's "omitted issue [was] essential to recovery").

[50]*See Dallas County Med. Soc'y*, 68 S.W.3d at 38 (stating that former TEX. REV. CIV. STAT. ANN. art. 4495b, § 5.06(l), now codified in TEX. OCC. CODE § 160.010(b), "provides immunity" and that "immunity is an affirmative defense that ordinarily must be pleaded").

[51]*See id.* (stating "the defense of immunity is not waived by the failure to specifically plead it if it is apparent on the face of the petition and established as a matter of law") (citing *Shoemake v. Fogel, Ltd.*, 826 S.W.2d 933, 937 (Tex. 1992)).